No. 3--05--0582

filed September 14, 2006.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

| | | |
|---|---|---|
| In re RYAN B., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| a Minor | ) | Peoria County, Illinois, |
| | ) | |
| (The People of the State | ) | |
| of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | No. 05--JA--22 |
| | ) | |
| v. | ) | |
| | ) | |
| Dennis E. D., | ) | Honorable |
| | ) | David J. Dubicki, |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE SLATER delivered the opinion of the court:

Respondent Dennis E. D. is the father of the minor, Ryan B. Ryan was found to be neglected by reason of an injurious environment while living with his mother. Following a dispositional hearing, the court found respondent unwilling to care for the minor and awarded guardianship to the Department of Children and Family Services (DCFS) with the right to place. Respondent appeals, arguing that the trial court erred in finding that he was unwilling to care for the minor and in granting DCFS the right to place the minor in foster care. We reverse and remand.

BACKGROUND

On February 4, 2005, the State filed a petition for wardship

based on several allegations indicating that Ryan's mother, Tina B., failed to provide a safe and nurturing environment for her four children. The State's petition sought an order of protection requiring Tina to use only DCFS approved caretakers, to submit to random urine drops or breathalyzer tests, and to keep unrelated males out of her home. Although the petition alleged that the children were unclean and lacked supervision, they were not removed from Tina's care. At arraignment proceedings on February 9, the court entered an order of protection as requested by the State. Tina informed the court that respondent was Ryan's father, and respondent was personally served with summons on February 18, 2005.

At the adjudicatory hearing, both Tina and respondent stipulated that the State could prove its allegations of neglect, none of which pertained to respondent. Based on the stipulations, the court entered an order on June 14, 2005, adjudicating the minors neglected.

On July 26, 2005, the cause proceeded to a dispositional hearing. DCFS child welfare specialist Mary French testified that she had taken over the case at the end of May 2005. A prior caseworker told her that the fathers of Tina's children were interested in placement. However, due to scheduling problems, French was not able to interview respondent until mid-July. She said no scheduled visits had been set up for respondent, but he was free to visit Ryan by making arrangements with Tina whenever he could "connect." French said she thought respondent picked

Ryan up at Tina's house and took him "places," but she did not know where. She said respondent was employed overseas between January and April 2004. Respondent told French he had not visited Ryan after he returned to the United States because he did not know Tina's whereabouts. French said Tina told her that she had lived at her current residence for a year.

Testifying on his own behalf, respondent said he first learned of Tina's address when he was served with summons. He said he wanted to see Ryan and offered to assume custody of him, but Tina did not agree to give him up pending resolution of the neglect proceedings. Respondent said he had had only one visit with Ryan since February 2005. He said he was working the 11 p.m. to 11 a.m. shift at Archer-Daniels-Midland (ADM), where he had been employed since April 2005. Prior to that, he had worked for a short time at an automobile dealership. He said he rotated shifts weekly at ADM according to a fixed yearly schedule. He was willing and able to arrange either to have visitation with Ryan or take custody of him if Tina lost custody. Respondent acknowledged that he really did not know Ryan, but he loved him and very much wished to get to know and bond with him. Tina testified that she receives child support from respondent through his employment.

In addition to the testimony, the court considered a social history report filed by French. This report showed that respondent lived in a two-story, six-bedroom home with his mother, his sister, and his three older sons from two prior

3

marriages. French noted that respondent's home was located in reasonable proximity of schools, hospitals and social service agencies, and that it met basic health and safety standards. Respondent told French that he had had a brief intimate relationship with Tina after his second divorce. Although they had an agreement not to have children, she became pregnant with Ryan. Respondent described himself as a "wonderful father, but a lousy husband."

French reported that respondent's three older sons treated Ryan like their baby brother and wanted to know when Ryan was coming to live with them. Respondent told French that Tina had offered to let him have Ryan for one weekend, but he was working that weekend and did not return her call. Respondent believed that Tina had substance abuse problems. Respondent told French that he loved Ryan; he wanted to give Ryan a home and give Tina visitation.

At the close of the hearing, the assistant State's Attorney argued that, even though placement with respondent was "probably appropriate" for Ryan, the court should find that respondent was "unwilling" to care for him because respondent had not taken sufficient steps to build a relationship with Ryan. She stated, "I'm sure that he is willing as a parent, but as it stands right now, that willingness has failed to show itself, not to suggest that it will not."

The court, in ruling that respondent was "unwilling" and that guardianship of Ryan should be awarded to DCFS, noted only

4

that respondent "has not exercised relationship &/or regular visits with minor although no impediments to doing so."  With regard to placement, the court found that the circumstances supporting its finding of Tina's unfitness to care for her children warranted removing Ryan from Tina and granting DCFS the right to place him.  The court made no finding that placement with respondent would jeopardize Ryan's health, safety and best interest.

ISSUES AND ANALYSIS

1.  <u>Unwillingness to Care for the Minor</u>

On appeal, respondent initially argues that the court's finding of his "unwillingness" to care for Ryan is contrary to the manifest weight of the evidence.

Wardship proceedings touch upon fundamental rights, and the natural ties between parents and their children may be neither severed nor frayed on the basis of mere speculation.  <u>In re Arthur H.</u>, 212 Ill. 2d 441, 819 N.E.2d 734 (2004).  Because biological parents have a superior right of custody to their children, both parents must be adjudged unfit, unable or unwilling to care for the minor before placement with DCFS is authorized.  <u>In re Edward T.</u>, 343 Ill. App. 3d 778, 799 N.E.2d 304 (2003).

The Juvenile Court Act of 1987 (Act) was enacted to secure care and guidance for minors, and to preserve and strengthen the minor's family ties whenever possible, removing him from the custody of his parents only when his safety or welfare, or the

5

protection of the public cannot be adequately safeguarded without removal.  705 ILCS 405/1--2 (West 2004).  Pursuant to the Act, the court may commit the minor to DCFS for care and services if a parent is unwilling to care for, protect, train or discipline the minor and the court finds "that the health, safety and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents, guardian or custodian."  705 ILCS 405/2--27(1) (West 2004).  The standard of proof for a circuit court's dispositional findings is a preponderance of the evidence.  In re April C., 326 Ill. App. 3d 245, 760 N.E.2d 101 (2001).  On review, we must determine whether the trial court's decision is contrary to the manifest weight of the evidence. April C., 326 Ill. App. 3d 245, 760 N.E.2d 101.

In this case, the evidence established that respondent had not established more than a biological relationship with Ryan prior to the institution of wardship proceedings.  However, this fact, standing alone, did not prove that he was unwilling to provide parental care and guidance for his son.  To the contrary, the evidence demonstrated that respondent stood ready, willing and able to care for his son and to provide parental guidance to him if Tina was found unfit to do so.

The evidence showed that respondent never lived with Tina after Ryan was born.  There was no indication that he even was aware of Ryan's environment prior to the adjudication hearing in June 2005, when Tina stipulated that the State could prove the allegations in its petition.  Once he received notice of the

6

proceedings, respondent offered to assume custody of his son to shield him from the disruption in his life that would ensue if he were removed from Tina's custody. Tina declined respondent's offer. The evidence also showed that respondent had recently changed jobs, and he had some difficulty coordinating arrangements with Tina in order to exercise visitation with Ryan pending the wardship proceedings. Nevertheless, respondent testified that he had a fixed work schedule for the year that allowed him to spend time with Ryan if regular visits were scheduled. Respondent testified that he loved Ryan, and he wished to take custody of him.

Under the circumstances, we cannot accept the trial court's conclusion that respondent's failure to interfere with Tina's rights as the custodial parent (see Arthur H., 212 Ill. 2d at 473, 819 N.E.2d at 752 (a custodial parent has a right to say "no" to a non-custodial parent who wishes to remove his child from her care)) or to exercise unscheduled visitation pending the wardship proceedings was sufficient proof of his unwillingness to care for Ryan. The court's finding was contrary to the manifest weight of the evidence; accordingly, we reverse the finding of unwillingness.

### 2. Placement

Respondent also contends that the trial court's decision granting DCFS the right to place Ryan in foster care was contrary to the manifest weight of the evidence. Generally, this court will not reverse a trial court's dispositional determination

7

unless we find that the court abused its discretion by selecting an inappropriate dispositional order.  In re Taylor B., 359 Ill. App. 3d 647, 834 N.E.2d 605 (2005).

Here, the court's dispositional order granted DCFS guardianship with the right to place the minor based solely on the court's finding that Tina's home was an injurious environment for a child.  This finding did not warrant granting DCFS the right to place Ryan with a third party.  See In re M.K., 271 Ill. App. 3d 820, 649 N.E.2d 74 (1995) (holding that a child may not be placed in custody of a third party without good cause or reason to deny custody to a fit parent).  The evidence before the court demonstrated that respondent did not live in Tina's home, and there was no evidence to indicate that respondent's home was not a safe and nurturing environment for Ryan.  See In re S.S., 313 Ill. App. 3d 121, 728 N.E.2d 1165 (2000) (an important factor in wardship decision is whether both parents lived in the home where the minor was neglected).  Under the circumstances, we hold that the court's order granting DCFS guardianship with the right to place was an abuse of discretion.

In sum, the record establishes that the court did not give consideration to respondent's superior right to custody of his own child.  Having found that the court's determination that respondent was unwilling to provide care and guidance was erroneous, we reverse as well the wardship order granting DCFS guardianship with the right to place.

CONCLUSION

8

For the reasons stated, the dispositional order finding respondent unwilling to care for the minor and granting guardianship to DCFS with the right to place is vacated, and the cause is remanded for further dispositional proceedings consistent with the views expressed herein.

Order vacated; cause remanded.

O'BRIEN and LYTTON, J.J., concur.