No. 3--07--0513

(Consolidated with Nos. 3--07--0514 and 3--07--515)

---

Filed July 7, 2008

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

| | |
|---|---|
| In re Ta.A., Te.A., and G.A., ) | Appeal from the Circuit Court |
| ) | of the 10th Judicial Circuit, |
| Minors ) | Peoria County, Illinois, |
| ) | |
| (The People of the State of ) | |
| Illinois, ) | |
| ) | |
| Petitioner-Appellee, ) | Nos. 07--JA--02, 07--JA--03, |
| ) | and 07--JA--04 |
| v. ) | |
| ) | |
| G.A., ) | Honorable |
| ) | Albert L. Purham, Jr., |
| Respondent-Appellant). ) | Judge, Presiding. |

---

PRESIDING JUSTICE McDADE delivered the opinion of the court:

---

The trial court adjudicated the minors, Ta.A. (Age 7), Te.A. (Age 6), and G.A. (Age 3), neglected, pursuant to stipulations by the parties. At the dispositional hearing, the trial court found the respondent, G.A. (hereafter the respondent), fit but made the minors wards of the court and named the Department of Children and Family Services (DCFS) as guardian. The respondent appeals, arguing that the trial court's placement of the children outside his home was against the manifest weight of the evidence. We vacate the trial court's order and remand the cause for further proceedings consistent with this decision and the decision in In

re C.B., T.A., T.A., and G.A., No. 3--07--0496 (2008) (unpublished order under Supreme Court Rule 23).

FACTS

On January 3, 2007, the State filed petitions, alleging that the minors and their brother, Cameron (Age 9), who has a different father, were neglected in that they lived in an environment that was injurious to their welfare. The petitions alleged that on December 22, 2006, Carlos I., Cameron's father, stole $60 from the minors' mother, Robin B. Carlos left the house but returned later. When Robin told him to leave, he grabbed Robin and threw her into the front door, resulting in cuts to her hand as it went through the door. Carlos then threatened Cameron that he would hurt him if he told anyone about the incident. The minors, Ta.A. and Te.A., were also in the house at the time. Carlos returned to the house on December 24, 2006, and was arrested. He returned again on December 27, 2006.

The petitions further alleged that Robin knew that Carlos had a substance abuse problem and a tendency to be violent but allowed him to be around the minors. On December 29, 2006, Robin refused to sign a DCFS safety plan to keep Carlos out of the house. She also refused to obtain an order of protection against Carlos. The petitions concluded with general allegations about the criminal histories of Carlos, Robin, and the respondent. As to the respondent, it alleged that he was convicted of armed robbery and the manufacture and distribution of a controlled substance in 1994.

On May 8, 2007, the trial court held an adjudication hearing. It found that the minors were neglected in that they were living in an environment injurious to their welfare because the respondent and Robin stipulated that the State could prove the allegations in the petitions. At the time of the adjudication, Ta.A. and Te.A. lived in relative foster care following the incidents of neglect. G.A., who was not present when the incidents of neglect occurred, lived in Maine with her maternal grandmother.

DCFS prepared a dispositional hearing report on May 25, 2007. The respondent and Robin had an intermittent relationship, beginning in 1998. At the time, the respondent had four children and Robin had three children. The relationship resulted in the birth of two children, Ta.A. and Te.A., in 1999 and 2000. Six months after Ta.A.'s birth, the respondent began to be actively involved in her life. She stayed with the respondent about five or six days a week, and the respondent paid for her day care and bought her clothes. The respondent maintained an active relationship with Ta.A. until Robin moved to Maine in 2002 when Ta.A. was three years old. The respondent did not have much of a relationship with Te.A. when Robin moved. The respondent's relationship with Robin apparently ended when she moved with the children to Maine. However, in 2002, the respondent visited Robin in Maine, and she became pregnant with G.A., who was born in 2003. The respondent did not have any contact with the children while they were in Maine.

3

In June 2006, Robin moved back to Illinois with the children.  Robin allowed Ta.A. to live with the respondent on a full-time basis for a couple of months.  During this time, Robin's sister took care of Te.A.  In August 2006, the respondent told Robin that he wanted guardianship of Ta.A., who wanted to live with him.  The respondent also made the same offer as to Te.A., but Te.A. declined because he did not have a relationship with the respondent.  The report does not indicate whether Ta.A. came to live with the respondent at this time, but it appears that she did not.  According to the respondent, he did not know that the minors were at risk until Robin told him that the children were taken into protective custody and he read the State's petitions.

The report further indicated that the respondent was convicted in 1994 for armed robbery and the manufacture and distribution of a controlled substance.  He served three years in prison and was released in 1997.  The respondent stated that he never experimented with alcohol or any other substances.  As a condition of his parole, he submitted to over 80 drug screens, all of which were negative.  The respondent's assessment for treatment and services concluded that he did not need drug and alcohol treatment or any other services.

While in prison, the respondent passed the general educational development test and earned his bachelor's degree in food service in 1997.  He is currently employed full-time at two restaurants.  He pays child support.

4

The respondent had three more children with two women following his relationship with Robin. He currently resides with one of the women, although they are not involved in a romantic relationship, and their two children.

The respondent indicated that he wanted Ta.A., Te.A., and G.A. to live with him. Ta.A. expressed a desire to live with the respondent. Te.A. would like to visit with the respondent, as he is not familiar with him.

On July 9, 2007, DCFS prepared an addendum to their initial dispositional hearing report. The addendum indicated that the respondent participated in weekly supervised visits with Ta.A. and Te.A. The visits had been positive and beneficial for the children. The addendum recommended that the respondent be allowed unsupervised visitation at the discretion of DCFS.

On July 24, 2007, the trial court held a dispositional hearing. Robin testified that between August 2006 and December 2006 she lived in various homes in Peoria. During this time, the respondent visited the children about two times. In October 2006, Robin decided to not allow the respondent to visit with the children because she believed that he favored Ta.A. and that he was not interested in visiting with Te.A. Specifically, she believed, although not confirmed by the caseworker, that the respondent's former paramour and the woman he lived with did not like Te.A. Also, Te.A. did not seem interested in visiting with the respondent.

The respondent confirmed Robin's testimony about his

5

visitation with the children between August 2006 and December 2006. However, he stated, and the caseworker confirmed, that his supervised visits with the children had gone well since they have been in foster care. He believed that his relationship with Te.A. had improved, and Te.A. appeared to respond well to the respondent's disciplinary measures. The respondent wanted Ta.A. and Te.A. to live with him. He did not think that G.A. should live with him as she lived in Maine, and he had not developed a relationship with her. He would like to develop a relationship with her.

The trial court found that the respondent was fit and that Robin was unfit. The trial court made the minors wards of the court and named DCFS as guardian with the right to place. The trial court gave DCFS discretion to order unsupervised visits between the respondent and the minors. The minors could not be returned home without a court order.

The respondent appeals.

ANALYSIS

On appeal, the respondent argues that the trial court's placement of the children outside his home was against the manifest weight of the evidence.

Under section 2--27(1) of the Juvenile Court Act of 1987, the trial court may commit a minor to DCFS wardship if the trial court determines that the parents are "unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to

6

do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents[.]"  705 ILCS 405/2--27(1) (West 2006). Generally, both parents must be adjudged unfit, unable, or unwilling before placement with DCFS is authorized because biological parents have a superior right to custody.  In re Ryan B., 367 Ill. App. 3d 517, 855 N.E.2d 272 (2006).  On review, the trial court's decision will be reversed if the findings of fact are against the manifest weight of the evidence or the trial court committed an abuse of discretion by selecting an inappropriate dispositional order.  In re April C., 326 Ill. App. 3d 245, 760 N.E.2d 101 (2001).

In this case, the trial court committed the minors to DCFS wardship even though it did not find the respondent unfit, unable, or unwilling to care for, protect, train, or discipline the minors.  In fact, the trial court found that he was fit, and the evidence showed that he was willing to care for the minors, particularly Ta.A. and Te.A.

The evidence showed that, prior to the neglect proceedings, the respondent had little involvement in the minors' lives because the minors lived in Maine for many years.  He only really had a relationship with Ta.A prior to their move to Maine. However, after the respondent received notice of the neglect proceedings, the respondent expressed a desire to have the minors live with him.  He pursued visitation with Ta.A. and Te.A., and such visitation had been successful in fostering a relationship

7

between the respondent and the minors. Ta.A. had expressed a desire to live with the respondent. Te.A. had become more comfortable with the respondent, and he responded well to the respondent's disciplinary measures. Thus, we find that the trial court properly found that the respondent was fit, but we question the trial court's decision to grant DCFS the right to place the minors in foster care. See Ryan B., 367 Ill. App. 3d 517, 855 N.E.2d 272 (finding that the trial court erred in finding that the respondent father was unwilling where he expressed a desire to have the child live with him even though he had established little more than a biological relationship with the child prior to the institution of wardship proceedings).

The trial court's decision to grant DCFS guardianship with the right to place was an abuse of discretion. The trial court did not articulate a reason as to why it granted DCFS guardianship with the right to place, and we refuse to speculate. As such, it was inappropriate for the trial court to place the minors with a third party, considering the respondent's superior right to custody. See In re M.K., 271 Ill. App. 3d 820, 649 N.E.2d 74 (1995) (stating that a child may not be placed with a third party without good cause or reason to deny custody to a fit parent); see also Ryan B., 367 Ill. App. 3d 517, 855 N.E.2d 272 (finding that the trial court erred in granting guardianship to DCFS with the right to place where the respondent, a parent with a superior right to custody of his own child, did not live in mother's house--the injurious environment to the child--and he

8

had a safe and nurturing house for the child).

The record shows that the trial court did not consider the respondent's superior right to custody of his children. The trial court properly found that the respondent was fit but erroneously ordered DCFS guardianship with the right to place. We vacate the trial court's dispositional order, granting guardianship to DCFS with the right to place, and remand for further proceedings. We note to the trial court that we reversed the finding of unfitness against the minors' mother, Robin, in <u>In re C.B., T.A., T.A., and G.A.</u>, No. 3--07--0496 (2008) (unpublished order under Supreme Court Rule 23). On remand, the trial court should read this order in conjunction with the order in that case when it conducts its further proceedings.

CONCLUSION

For the foregoing reasons, we vacate the dispositional order of the trial court, granting guardianship to DCFS with the right to place, and remand the cause for further proceedings consistent with this decision and the decision in <u>In re C.B., T.A., T.A., and G.A.</u>, No. 3--07--0496 (2008) (unpublished order under Supreme Court Rule 23).

Order vacated; cause remanded.

WRIGHT and HOLDRIDGE, JJ., concur.