# Illinois Official Reports

## Supreme Court

---

### *In re M.M.*, 2016 IL 119932

---

| | |
|---|---|
| Caption in Supreme Court: | *In re* M.M. and J.M., Minors (The People of the State of Illinois, Appellant, v. Heather M., Appellee). |
| Docket No. | 119932 |
| Filed | December 1, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Peoria County, the Hon. Mark E. Gilles, Judge, presiding. |
| Judgment | Affirmed and remanded. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Jerry Brady, State's Attorney, of Peoria (Carolyn E. Shapiro, Solicitor General, Christina T. Hansen, Assistant Attorney General, and Patrick Delfino, Terry A. Mertel, and Richard T. Leonard, of the Office of the State's Attorneys Appellate Prosecutor, of counsel), for the People. |
| | Louis P. Milot, of Peoria, for appellee. |
| | Daniel P. Albers, of Barnes & Thornburg LLP, and Diane L. Redleaf, both of Chicago, for *amici curiae* The Family Defense Center *et al.* |

Justices                    JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Thomas, Kilbride, Garman, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1       At the close of a dispositional hearing on a juvenile petition based on neglect, the circuit court of Peoria County found that respondent, Heather M., was a fit parent to her children, J.M. and M.M. However, the court awarded temporary custody and guardianship to the Department of Children and Family Services (DCFS). The appellate court (2015 IL App (3d) 130856) reversed the judgment of the trial court and remanded to allow that court to enter specific findings consistent with section 2-27(1) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-27(1) (West 2012)). This court allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Jan. 1, 2015). For the following reasons, we now affirm the judgment of the appellate court and remand the cause to the trial court for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3       On July 31, 2013, DCFS filed separate juvenile petitions seeking wardship of 9-year-old J.M. and 10-year-old M.M. The petitions claimed that the minors were neglected because their environment was injurious to their welfare. See 705 ILCS 405/2-3(1)(b) (West 2012). At that time, the minors lived with their father, Larry. Each petition alleged as follows. Between July 1 and July 3, 2013, Larry was taking care of the children of his girlfriend, who was not respondent. One of those children, who was six years old, had a bedwetting accident. Larry "struck [the child] on the buttocks and slapped his face leaving multiple bruises on [the child's] buttocks and face." Also, Larry had a criminal history that consisted of a charge of battery in 2003 and charges of driving under the influence in 2003 and 2008. Each petition asserted that respondent's whereabouts were unknown.

¶ 4       Larry entered into an agreed order of protection with DCFS, which provided, *inter alia*, that the minors would reside with their paternal grandparents, Larry's visits with the children would be supervised, and Larry could not live with the minors or stay with them overnight. Respondent was not a signatory to the order of protection. Larry subsequently disclosed respondent's name. The trial court appointed legal counsel for respondent, and she filed an answer to the juvenile petition. The court also appointed a guardian *ad litem* for the minors.

¶ 5       The trial court held an adjudicatory hearing in which the parties stipulated to the petition's allegations. The hearing consisted essentially of the State's proffer as to what evidence would have been introduced had there been no stipulations. There was no evidence or other information presented concerning respondent. At the close of the adjudicatory hearing, the court found that the minors were neglected due to an injurious environment not involving physical abuse. The court specifically found that respondent did not contribute to this injurious environment.

¶ 6 Lutheran Social Services of Illinois (LSSI) filed with the court a dispositional hearing report on respondent dated October 7, 2013. The report included the following information. Prior to her relationship with Larry, respondent was married and divorced. Two daughters were born in the marriage, one of whom lived with respondent's ex-husband. Respondent remarried. According to respondent, her husband "gave her an ultimatum that it was him or the kids and she left him in 2001." The marriage ended with his death from natural causes. Respondent then had a relationship with Larry from 2002 to 2008, into which J.M. and M.M. were born. During their relationship, Larry had problems with alcohol, drugs, and domestic violence, but there was never police involvement with respect to any incidents between them. Respondent told the caseworker that Larry "brought another woman into the home and told [respondent] to get out." According to Larry's LSSI dispositional hearing report, Larry "stated that he lost interest in [respondent]." After her relationship with Larry ended, respondent was in a relationship in which a daughter was born. The daughter resides with respondent.

¶ 7 Respondent's LSSI dispositional hearing report also stated that she had stable housing in Peoria and had obtained a certified nursing assistant certificate and training in phlebotomy. Respondent was not addicted to alcohol or illegal substances, had passed a random drug screening, and had never been arrested. Respondent takes prescription medication for bipolar disorder, anxiety disorder, and depression. In 2011 and 2012, respondent completed a parenting class and a domestic violence class as part of an intact family service program and had recently engaged in an intact family program through LSSI and indicated a willingness to participate in services. Further, respondent was cooperating with the LSSI caseworker. The report opined: "Both of the minors are completely aware of why their family is involved with LSSI/DCFS. This worker feels that the children would benefit from counseling services. This worker feels that the children are safe in their paternal grandparents' home and care at this time." The report concluded that respondent would be able to provide a safe, loving, and nurturing environment in which to raise her children if she continued to cooperate and participate in services as requested. The report recommended that respondent continue to be found fit. The report made no guardianship or placement recommendation regarding the minors.

¶ 8 At the dispositional hearing, the LSSI caseworker took no position as to who should be appointed guardian for J.M. and M.M. Both the State and the guardian *ad litem* agreed that respondent was a fit parent. However, both the State and the guardian *ad litem* argued that the minors should be made wards of the court and DCFS should be appointed guardian. The State provided no basis for this assertion. The guardian *ad litem* stated: "She [respondent] has some mental health issues; I hope those can be addressed."

¶ 9 Respondent agreed that she was a fit parent and that the minors should be made wards of the court. She also agreed with the LSSI assessment and recommendations. However, she contended that placement with DCFS was not necessary and asked that the court grant her custody and guardianship of her children.

¶ 10 At the close of the dispositional hearing, the trial court found Larry unfit as a parent. The court further found: "DCFS is appointed guardian of these children, although I do find the mother, [respondent], to be fit. I also find that placement is necessary, based on all that was presented in the materials for my review for this disposition and upon considering argument." The court's written dispositional order reflected the court's oral findings and also required

respondent to perform various tasks "to correct the conditions that led to the adjudication and/or removal of the children." In addition to generally cooperating with DCFS or its designee, these tasks included taking a mental health assessment to determine if counseling was needed. If so, then respondent was ordered to undergo counseling. The form order indicated that respondent was fit and did not indicate that she was unable or unwilling to care for her children, and the order lacked any written basis to support a finding of inability or unwillingness.

¶ 11 Respondent appealed to the appellate court. 2015 IL App (3d) 130856. The State conceded that the trial court "did not articulate specific reasons for its decision and did not state that the respondent was unable or unwilling to care for the children." *Id.* ¶ 13. The appellate court concluded that the trial court thereby violated section 2-27(1) of the Act (705 ILCS 405/2-27(1) (West 2012)). 2015 IL App (3d) 130856, ¶ 14. The appellate court explained that the trial court was not authorized to grant custody of the minors to DCFS without a finding of unfitness or a properly supported finding that respondent was unable or unwilling to care for the minors. Accordingly, the appellate court held that the trial court committed reversible error in awarding custody of the minors to DCFS. *Id.* ¶ 15. The appellate court remanded the case "so that the trial court may enter explicit, specific findings consistent with the requirements of section 2-27(1)." *Id.* ¶ 16.

¶ 12 Upon denial of the State's petition for rehearing, the appellate court repeated that, pursuant to section 2-27(1) of the Act, a court "may award custody to DCFS only after it has first determined that the natural parents are unfit, unwilling, or unable to care for the child." *Id.* ¶ 18. Accordingly, a mere showing that a child's placement with a third party might be in the child's best interest is insufficient to supersede a fit parent's superior right to custody. Rather, a court must find that the fit parent is unable, for other than a solely financial reason, to care for, protect, train, or discipline the minor or is unwilling to do so. *Id.* ¶ 19.

¶ 13 The State appeals to this court. We granted the Family Defense Center *et al.* leave to submit an *amici curiae* brief in support of respondent. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). Additional pertinent background will be discussed in the context of our analysis of the issues.

## II. ANALYSIS

¶ 14

¶ 15 Before this court, the State agrees with the appellate court that remand is necessary for the trial court to articulate the factual basis for its order placing guardianship and custody of J.M. and M.M. with DCFS. However, the State assigns error to the appellate court's holding that the Act required the trial court to find parental unfitness, inability, or unwillingness as a prerequisite to placing the minors with DCFS. The State contends that the Act authorizes a trial court to place an abused, neglected, or dependent child with someone other than a parent if that placement is necessary based on the best interests of the child, even absent a finding that both parents are unfit, unable, or unwilling to care for the child. The resolution of this issue requires us to construe the relevant provisions of the Act. Because the construction of a statute is a question of law, our review is *de novo*. *Williams v. Staples*, 208 Ill. 2d 480, 487 (2004); *In re Detention of Lieberman*, 201 Ill. 2d 300, 307 (2002).

¶ 16 The primary rule of statutory construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the intent of the legislature. The most reliable indicator of legislative intent is the language of the statute, which should be given its plain and

ordinary meaning. *Bayer v. Panduit Corp.*, 2016 IL 119553, ¶ 18; *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 279 (2003). A statute is viewed as a whole. Therefore, words and phrases must be construed in light of other relevant statutory provisions and not in isolation. Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. Also, the court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Williams*, 208 Ill. 2d at 487; *Lieberman*, 201 Ill. 2d at 308.

¶ 17    The Act sets forth the procedures that must be followed in determining whether a minor should be removed from his or her parents' custody and be made a ward of the court. *In re A.W.*, 231 Ill. 2d 241, 254 (2008). Article II of the Act governs proceedings involving abused, neglected, or dependent minors. 705 ILCS 405/2-1 (West 2012). The procedural history of the instant case renders extended discussion of several sections of article II unnecessary. An agreed order placed J.M. and M.M. in the temporary custody of their paternal grandparents. Subsequently, the parties stipulated that the minors were neglected due to an injurious environment not involving physical abuse, to which respondent did not contribute. Thereafter, the Act required the trial court to hold a dispositional hearing, in which the court must first determine whether it is in the best interests of the minor and the public that the minor be made a ward of the court. 705 ILCS 405/2-21(2), 2-22(1) (West 2012). At the instant dispositional hearing, respondent agreed that J.M. and M.M. should be made wards of the court.

¶ 18    However, respondent sought custody of J.M. and M.M., contending that placement with DCFS was not necessary. Pursuant to the Act, if a minor "is to be made a ward of the court, the court shall determine the proper disposition best serving the health, safety and interests of the minor and the public." 705 ILCS 405/2-22(1) (West 2012). The trial court may make four basic types of dispositional orders with respect to a ward of the court. The minor may be (1) continued in the care of the minor's parent, guardian, or legal custodian; (2) restored to the custody of the minor's parent, guardian, or legal custodian; (3) ordered partially or completely emancipated; or (4) "placed in accordance" with section 2-27 of the Act. 705 ILCS 405/2-23(1)(a) (West 2012). Section 2-27 provides in relevant part:

"(1) If the court determines and puts in writing the factual basis supporting the determination of whether the parents, guardian, or legal custodian of a minor adjudged a ward of the court are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, *and* that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents, guardian or custodian, the court may at this hearing and at any later point:

* * *

(d) commit the minor to the Department of Children and Family Services for care and service ***." (Emphasis added.) 705 ILCS 405/2-27(1) (West 2012).

Where the State does not seek to terminate parental rights, section 2-27(1) is concerned only with placement of the minor. *In re Madison H.*, 215 Ill. 2d 364, 374 (2005).

¶ 19    In the case at bar, the trial court placed the minors with DCFS without articulating a factual basis for its order. Holding that the trial court committed reversible error, the appellate court explained: "The statutory scheme and case law interpreting it dictate that a trial court cannot

- 5 -

move on to a best interest determination until it finds the natural parents unfit, unwilling, or unable to care for their minor child." 2015 IL App (3d) 130856, ¶ 15.[1] The appellate court stated that section 2-27(1) requires explicit findings by the trial court that the respondent is unfit, unable, or unwilling to care for her children. *Id.* ¶ 16.

¶ 20    Before this court, the State contends, as it contended before the appellate court (*id.* ¶ 17), that the Act authorizes a trial court to place a ward of the court with a third party, such as DCFS, if the court finds such placement to be in the minor's best interest, even if the court has not found that the child's biological parents are unfit, unable, or unwilling to care for the child. We reject this contention.

¶ 21    We begin with the plain language of section 2-27(1). Prior to committing a minor to the custody of a third party, such as DCFS, a trial court must first determine whether the parent is unfit, unable, or unwilling to care for the child, *and* whether the best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents. 705 ILCS 405/2-27(1) (West 2012). "The word 'and' has been defined in our courts as meaning 'in addition to.' [Citation.] It is something in addition to or beyond that which has gone before." *People ex rel. Dixon v. Community Unit School District No. 3*, 2 Ill. 2d 454, 460 (1954). It is well settled that, generally, the use of a conjunctive such as "and" indicates that the legislature intended that *all* of the listed requirements be met. *DG Enterprises, LLC-Will Tax, LLC v. Cornelius*, 2015 IL 118975, ¶ 31; *Jarvis v. South Oak Dodge, Inc.*, 201 Ill. 2d 81, 87 (2002). Of course, courts sometimes construe the word "and" to mean "or" and vice versa. However, this is done only in cases where there is an apparent repugnance or inconsistency in a statute that would defeat its main intent and purpose. " 'When these words are found in a statute and their accurate reading does not render the sense dubious they should be read and interpreted as written in the statute.' *Voight v. Industrial Comm'n*, 297 Ill. 109, 114 (1921)." *People v. A Parcel of Property Commonly Known as 1945 North 31st Street*, 217 Ill. 2d 481, 500-01 (2005).

¶ 22    The State argues that the appellate court's literal reading of section 2-27(1) is contrary to the legislature's own stated purpose and policy of the Act. The State points to section 1-2 of the Act, which provides, in pertinent part, that the purpose of the Act "is to secure for each minor subject hereto such care and guidance, preferably in his or her own home, as will serve the safety and moral, emotional, mental, and physical welfare of the minor and the best interests of the community." 705 ILCS 405/1-2(1) (West 2012). Moreover: "The parents' right to the custody of their child shall not prevail when the court determines that it is contrary to the health, safety, and best interests of the child." 705 ILCS 405/1-2(3)(c) (West 2012). Further:

> "(1) At the dispositional hearing, the court shall determine whether it is in the best interests of the minor and the public that he be made a ward of the court, and, if he is to

---

[1] Earlier in this paragraph, the appellate court stated: "Without a finding of unfitness *** the trial court was not authorized *to make the children wards of the court* and to grant custody and guardianship of the children to DCFS." (Emphasis added.) 2015 IL App (3d) 130856, ¶ 15. This was an obvious overstatement. The trial court's finding that it is in the best interest of the minor to become a ward of the court must precede the court's consideration of whether a parent is dispositionally unfit and the need for guardianship. *In re C.L.*, 384 Ill. App. 3d 689, 693 (2008). This misstatement is found nowhere else in the appellate court's opinion and should be disregarded. In any event: "The function of this court is to review the judgment appealed from and not pass on the form of the opinion involved." *York v. Stiefel*, 99 Ill. 2d 312, 319 (1983).

be made a ward of the court, the court shall determine the proper disposition best serving the health, safety and interests of the minor and the public." 705 ILCS 405/2-22(1) (West 2012).

According to the State: "These provisions demonstrate that the best interests of the child are paramount."

¶ 23    We cannot accept the State's argument. We initially observe that section 1-2 of the Act provides that the purpose of the Act is also "to preserve and strengthen the minor's family ties whenever possible, removing him or her from the custody of his or her parents only when his or her safety or welfare or the protection of the public cannot be adequately safeguarded without removal." 705 ILCS 405/1-2(1) (West 2012). "It is apparent that the preferred result under the Juvenile Court Act is that a child remain in his or her home, in the custody of his or her parents. This is a clarification of the child's best interests." *In re R.C.*, 195 Ill. 2d 291, 308 (2001).

¶ 24    Indeed, the statutory scheme for dispositional hearings effectuates this policy. The best interest standard governs both the determination of whether an adjudicated minor should be made a ward of the court and, if so, the determination of the minor's proper disposition. The Act provides four possible authorized dispositions, three of which do not involve placing the minor with a third party. The one authorized disposition that does involve third-party placement requires placement "in accordance with Section 2-27." 705 ILCS 405/2-23(1)(a) (West 2012). Thus, the legislature recognizes that even where the best interest standard permeates and governs the entire dispositional hearing, placement of the minor with a third party nonetheless requires the prerequisite consideration of parental fitness.

¶ 25    Therefore, to adopt the State's interpretation of section 2-27(1) would upset the careful balance the legislature has crafted. There is nothing to suggest that an accurate reading of "and" in section 2-27(1) would defeat the main intent and purpose of the Act, and there is nothing "dubious" about reading "and" conjunctively. Accordingly, section 2-27(1) must be applied as written. See *DG Enterprises*, 2015 IL 118975, ¶ 32.

¶ 26    Moreover, this court must construe a statute in a manner that upholds its constitutionality if it reasonably can be done. *In re R.L.S.*, 218 Ill. 2d 428, 433 (2006); *Wickham v. Byrne*, 199 Ill. 2d 309, 316 (2002). It is beyond discussion that parents have a fundamental liberty interest in the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000) (and cases cited therein); *Wickham*, 199 Ill. 2d at 316-17 (collecting cases); *In re M.H.*, 196 Ill. 2d 356, 362 (2001) (collecting cases). Further, as a matter of constitutional law, "there is a presumption that fit parents act in the best interests of their children." *Troxel*, 530 U.S. at 68. "Accordingly, so long as a parent [is fit], there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id.* at 68-69; see *R.L.S.*, 218 Ill. 2d at 439; *Wickham*, 199 Ill. 2d at 318-19.

¶ 27    In *Troxel*, the United States Supreme Court invalidated a visitation statute that allowed a petition to go directly to a best interests determination, without any deference to the decision of a fit parent. *Troxel*, 530 U.S. at 69-70. In *R.L.S.*, this court held that our Probate Act of 1975 (755 ILCS 5/1-1 *et seq.* (West 2004)) was constitutional under *Troxel*:

> "By allowing a guardianship petition to proceed to a hearing on the merits over the wishes of a parent only when the parent has been established to be unwilling or unable

to carry out day-to-day child-care decisions, the Probate Act respects the superior rights of parents while also insuring to protect the health, safety, and welfare of children." *R.L.S.*, 218 Ill. 2d at 441.

The State's argument that the best interest standard trumps all would run afoul of *Troxel*. The plain language of section 2-27(1) respects the constitutional rights of parents while also insuring to protect the best interests of children. Our appellate court has repeatedly so recognized. See, *e.g.*, *In re Ta. A.*, 384 Ill. App. 3d 303, 306-07 (2008); *In re Ryan B.*, 367 Ill. App. 3d 517, 521 (2006); *In re S.S.*, 313 Ill. App. 3d 121, 132-33 (2000).

¶ 28    In support of its contention, the State cites to this court's repeated pronouncement that, in child custody disputes, it is not necessary that the natural parent is unfit or has forfeited his or her custodial rights before awarding custody to another person if the best interests of the child will be served. *In re Austin W.*, 214 Ill. 2d 31, 50-51 (2005); *In re Custody of Townsend*, 86 Ill. 2d 502, 508 (1981); *People ex rel. Edwards v. Livingston*, 42 Ill. 2d 201, 209 (1969). The State acknowledges that in *R.L.S.* we criticized this statement as "wrong and should no longer be followed." *R.L.S.*, 218 Ill. 2d at 447. However, the State infers that this legal proposition remains valid because we repeated it in *Austin W.* and did not include that case in our repudiation in *R.L.S.* We again repudiate this erroneous legal proposition. Further, the appellate court declined to follow several appellate court decisions that applied the same erroneous rule. *In re Star R.*, 2014 IL App (1st) 140920, ¶ 29; *In re S.J.*, 364 Ill. App. 3d 432, 442 (2006); *In re J.J.*, 327 Ill. App. 3d 70, 77 (2001); *In re J.F.K.*, 174 Ill. App. 3d 732, 734 (1988). To the extent that these appellate court decisions conflict with this opinion, they are hereby overruled.[2]

¶ 29    Additionally, respondent observes that the trial court has found her to be fit and did not indicate that she was unable or unwilling to care for her children. Respondent posits that, on remand, she would remain a fit parent. Respondent characterizes this status as "the law of the case" and asserts that there is no proper procedure for evidence to be introduced that could prove she is unable or unwilling. Therefore, respondent contends that remand is unnecessary and asks us to "order immediate placement" with her.

¶ 30    Respondent cites no authority and presents no argument beyond this bare contention. This court will consider only fully briefed and argued issues. Ill. S. Ct. R. 341(h)(7), (i) (eff. Feb. 6, 2013). A court of review is entitled to have the issues clearly defined with pertinent authority cited and cohesive arguments presented. *Lake County Grading Co. v. Village of Antioch*, 2014 IL 115805, ¶ 36. Accordingly, respondent has forfeited this contention, and we do not consider it. See, *e.g.*, *Bartlow v. Costigan*, 2014 IL 115152, ¶ 52; *Canteen Corp. v. Department of Revenue*, 123 Ill. 2d 95, 111-12 (1988).

¶ 31    We hold that section 2-27(1) of the Act does not authorize placing a ward of the court with a third party absent a finding of parental unfitness, inability, or unwillingness to care for the minor. In light of this holding, we need not address respondent's alternative contention that the trial court's decision was against the manifest weight of the evidence. See, *e.g.*, *Kajima*

_____

[2]As it did before the appellate court, the State again cites *In re Y.A.*, 383 Ill. App. 3d 311, 315 (2008), for this erroneous legal principle. However, the appellate court correctly viewed that case as distinguishable: "In *Y.A.*, the trial court made the necessary, specific findings of fact as to why the fit father was unable to care for the minor. Accordingly, placement with DCFS was proper." 2015 IL App (3d) 130856, ¶ 16 n.3.

*Construction Services, Inc. v. St. Paul Fire & Marine Insurance Co.*, 227 Ill. 2d 102, 117 (2007).

¶ 32                                    III. CONCLUSION

¶ 33        For the foregoing reasons, the judgment of the appellate court is affirmed, and the cause is remanded to the circuit court of Peoria County for further proceedings.

¶ 34        Affirmed and remanded.