2018 IL App (3d) 170009

Opinion filed March 21, 2018

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2018

| | | |
|---|---|---|
| *In re* M.T., | ) | |
| | ) | Appeal from the Circuit Court |
| a Minor | ) | of the 10th Judicial Circuit, |
| | ) | Peoria County, Illinois. |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-17-0009 |
| | ) | Circuit No. 16-JA-132 |
| v. | ) | |
| | ) | |
| Malcolm T., | ) | The Honorable |
| | ) | Kirk D. Schoenbein, |
| Respondent-Appellant). | ) | Judge, presiding. |
| | ) | |

_____

JUSTICE McDADE delivered the judgment of the court, with opinion.
Presiding Justice Carter and Justice Wright concurred in the judgment and opinion.

_____

**OPINION**

¶ 1    The State filed a juvenile petition against M.T.'s mother and respondent father claiming that M.T. was neglected. Respondent filed a motion to strike the allegations against him, and the State dismissed the allegations. Subsequently, the court adjudicated M.T. neglected, determining that the mother contributed to the injurious environment but respondent did not. At the

dispositional hearing, the court determined that M.T.'s mother was unfit and that respondent was fit. However, the court adjudicated M.T. a ward of the court and appointed the Department of Children and Family Services (DCFS) as guardian with the right to place. Respondent appeals, arguing that the appointment was improper. We vacate the trial court's dispositional order and remand for a new dispositional hearing.

¶ 2                                                    FACTS

¶ 3        In May 2016, the State filed a juvenile petition, alleging that the minor M.T., born May 16, 2016, was neglected and requesting that M.T. be adjudicated a ward of the court. The petition stated that M.T.'s mother Jimeka R. was previously found unfit and that Jimeka reported to DCFS that M.T.'s putative father, respondent Malcolm T., was partying all the time and using cannabis. A few days later, respondent filed a voluntary acknowledgment of paternity. The trial court accepted the paternity and held that respondent was M.T.'s legal father. The court also ordered temporary custody to DCFS and allowed DCFS to place M.T. with respondent if it found placement was appropriate.

¶ 4        In June, respondent filed an answer to the petition and moved to strike the allegations against him. The State dismissed the allegations against respondent but the allegations against Jimeka remained in the petition. In August 2016, an adjudication hearing was held in which the trial court found that M.T. was neglected as a result of her injurious environment but respondent did not contribute to it.

¶ 5        A subsequent dispositional hearing was held on the same day. At the hearing, Lauren Grunwald, a DCFS agent, testified that M.T. had been with her father since she was born. She visited respondent's home and believed that it was appropriate and that there were no safety concerns. M.T. appeared attached to respondent, and they had a strong bond. She believed that

2

respondent was able to take care of M.T. and that respondent had family for help and support. However, she opined that DCFS should be granted guardianship of M.T. because respondent's drug test was positive.

¶ 6 Respondent testified that he previously smoked cannabis heavily and that he had last used it about a day before M.T. came home from the hospital but had since quit. Respondent was born with 6/4 vision, was deemed legally blind, and was receiving disability. He had broken his eyeglasses and was in the process of getting a new pair. He may need surgery on his eyes and was willing to invest in his eye care. If his vision gets better, he would qualify for a driver's license.

¶ 7 The State asked the court to make M.T. a ward of the court, to appoint DCFS as guardian, to find M.T.'s mother unfit, to find respondent was fit, and to place M.T. with respondent. The State urged that respondent have a "completely clean" drug test before regaining guardianship of M.T. Respondent argued that he should have guardianship of M.T. The guardian *ad litem* (GAL) opined that it was in the best interest of M.T. if she was made ward of the court and DCFS was appointed guardian. The GAL believed DCFS should be guardian because respondent had previously tested positive for marijuana and had been "lackadaisical" about improving his vision.

¶ 8 The trial court found that respondent was a fit parent but held M.T.'s mother was unfit. It further determined that it was in the best interest of M.T. to be ward of the court and appointed DCFS as guardian with the right to place, stating "We do have a father who's very new at it and does have a health issue that needs to be addressed. And then also, the Court needs some confidence that the marijuana smoking is conquered. So I think it's in the best interest that the guardian initially be DCFS." It ordered respondent to complete a service plan to "correct the conditions which caused the child to be in foster care." The court explained that the goal was "to

3

make a transition of the child into [respondent's] care." The court further stated: "And given that you're a new parent, I want a period of time where I can have some confidence that there is no problem. It appears that that's the way it's going to be. So I fully expect that if everything goes well, the next court date we can close this case out and have you as the guardian." Respondent appealed.

¶ 9       In December, a permanency hearing was held. In the permanency report, Grunwald stated that M.T. was residing with respondent and that he was providing safe housing. A November 14, 2016, status report showed that M.T. had lived with respondent from May 2016 to November 2016.

¶ 10                                   ANALYSIS

¶ 11       Respondent argues that the trial court improperly appointed DCFS as guardian with the right to place despite its determination that respondent was a fit parent in accordance with section 2-27 of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-27 (West 2016)). Respondent contends that awarding DCFS guardianship with the right to place commits the child to DCFS and that section 2-27(1) requires the court to make a finding of unfitness before such commitment occurs.

¶ 12       Section 2-27 governs placement of a minor after he has been adjudicated a ward of the court. In particular, section 2-27(1) states:

>        "(1) If the court determines and puts in writing the factual basis
> supporting the determination of whether the parents, guardian, or legal
> custodian of a minor adjudged a ward of the court are unfit or are unable,
> for some reason other than financial circumstances alone, to care for,
> protect, train or discipline the minor or are unwilling to do so, and that the

4

health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents, guardian or custodian, the court may at this hearing and at any later point:

  (a) place the minor in the custody of a suitable relative or other person as legal custodian or guardian;

  (a-5) with the approval of the Department of Children and Family Services, place the minor in the subsidized guardianship of a suitable relative or other person as legal guardian; 'subsidized guardianship' means a private guardianship arrangement for children for whom the permanency goals of return home and adoption have been ruled out and who meet the qualifications for subsidized guardianship as defined by the Department of Children and Family Services in administrative rules;

  (b) place the minor under the guardianship of a probation officer;

  (c) commit the minor to an agency for care or placement, except an institution under the authority of the Department of Corrections or of the Department of Children and Family Services;

  *(d) on and after the effective date of this amendatory Act of the 98th General Assembly and before January 1, 2017,*[1] *commit the minor to the Department of Children and Family Services for*

---

[1]The dispositional hearing in this case was held on August 10, 2016, which was after the January 1, 2015, effective date of the amendatory act of the 98th General Assembly and before January 1, 2017.

*care and service ***."* (Emphasis added.) 705 ILCS 405/2-27(1) (West 2016).

¶ 13    Respondent cites *In re M.M.*, 2016 IL 119932, to support his argument that the court must find him unfit before it grants guardianship to DCFS pursuant to section 2-27(1). In *M.M.*, the trial court granted DCFS custody and guardianship of the minors at the end of a dispositional hearing although the court found respondent was a fit parent and it did not indicate that respondent was unable or unwilling to care for the minors. *Id.* ¶ 10. On appeal, respondent argued that the trial court erred when it granted DCFS custody and guardianship of the minors without a finding of unfitness, and this court agreed, reversing the trial court's decision and remanding the cause for explicit findings in accordance with section 2-27. *Id.* ¶ 11. Affirming this court's decision, our supreme court concluded that section 2-27(1) "does not authorize placing a ward of the court with a third party absent a finding of parental unfitness, inability, or unwillingness to care for the minor." *Id.* ¶ 31.

¶ 14    The State alleges that M.T. was not committed to DCFS. Rather, respondent retained custody of M.T. because M.T. continued to live with respondent after the dispositional hearing. The State claims that section 2-23(1)(a)(1) of the Act (705 ILCS 405/2-23(1)(a)(1) (West 2016)) applies because DCFS never obtained custody of M.T., and therefore, the court was not required to make a finding of unfitness before awarding DCFS guardianship with the right to place.

¶ 15    Section 2-23 allows the court to order different types of dispositions when a minor is adjudicated a ward of the court. Section 2-23(1)(a)(1) states:

"(1) The following kinds of orders of disposition may be made in respect of wards of the court:

6

(a) A minor under 18 years of age found to be neglected or

abused under Section 2-3 or dependent under Section 2-4 may be

*(1) continued in the custody of his or her parents, guardian or*

*legal custodian*; (2) placed in accordance with Section 2-27; (3)

restored to the custody of the parent, parents, guardian, or legal

custodian, provided the court shall order the parent, parents,

guardian, or legal custodian to cooperate with the Department of

Children and Family Services and comply with the terms of an

after-care plan or risk the loss of custody of the child and the

possible termination of their parental rights; or (4) ordered partially

or completely emancipated in accordance with the provisions of

the Emancipation of Minors Act." (Emphasis added.) 705 ILCS

405/2-23(1)(a) (West 2016).

¶ 16       The State cites two decisions, *In re E.L.*, 353 Ill. App. 3d 894, 896 (2004), and *In re*

*M.P.*, 408 Ill. App. 3d 1070 (2011), for the proposition that a trial court's appointment of

guardianship to DCFS is proper under section 2-23(1)(a)(1) when custody is retained with the

parent. In *E.L.*, the State filed a juvenile petition arguing that two minors were neglected. *E.L.*,

353 Ill. App. 3d at 895. The trial court found that the minors were in an injurious environment

and adjudicated them neglected. *Id.* at 896. At the dispositional hearing, the court found

respondent mother fit but reserved a ruling on unfitness. *Id.* It appointed DCFS as guardian but

ordered that the children remain with the respondent. *Id.* The respondent appealed the decision,

claiming that the trial court abused its discretion when it appointed DCFS as guardian without

making a finding of unfitness in violation of section 2-27(1). *Id.* at 897. This court noted that

section 2-27 was not applicable to the case because the section requires a finding of unfitness before "a minor may be *placed* with DCFS for care and services" whereas the issue at hand involved the appointment of DCFS as guardian while the parent retained custody of the minors. (Emphasis in original.) *Id.* at 898. We determined that section 2-23(1)(a)(1) was applicable because it addressed the issuance of dispositional orders continuing the minors in the custody of their parents. *Id.* Section 2-23(1)(a)(1) does not require a finding of unfitness; therefore, this court determined the trial court's ruling was not an abuse of discretion. *Id.*

¶ 17    In *M.P.*, the State filed a juvenile petition arguing the minors were neglected due to an injurious environment, and the court adjudicated the minors neglected. *M.P.*, 408 Ill. App. 3d at 1071-72. At the dispositional hearing, the court found that respondent was fit and "allowed her to retain custody of the minors, but made the minors wards of the court and appointed DCFS as their guardian." *Id.* at 1073. This court found that the trial court's decision to divide guardianship to DCFS and custody to respondent was proper under section 2-23(1)(a)(1). *M.P.*, 408 Ill. App. 3d at 1074.

¶ 18    Under section 2-27(1) "both parents must be adjudged unfit, unable, or unwilling before placement with DFCS is authorized because biological parents have a superior right to custody." *In re Ta. A.*, 384 Ill. App. 3d 303, 307 (2008). However, an unfitness determination is not required under section 2-23(1)(a)(1) because the parent retains custody of the minor. In all the cases provided above, the trial court made clear in its findings which party had custody and/or guardianship of the minors. Here, the record shows that the trial court found respondent fit but appointed DCFS guardianship with the right to place. The record also reveals that M.T. continued to reside with respondent throughout, and at least three months after, the court proceedings. Because DCFS was appointed guardian but defendant retained physical possession

8

of M.T., we must determine who had custody of M.T. in order to apply the proper statutory law. " 'On review, the trial court's determination will be reversed only if the findings of fact are against the manifest weight of the evidence or if the trial court committed an abuse of discretion by selecting an inappropriate dispositional order.' " *In re April C.*, 326 Ill. App. 3d 245, 257 (2001) (quoting *In re T.B.*, 215 Ill. App. 3d 1059, 1062 (1991)).

¶ 19      We believe section 2-27(1) applies in this case. Once again, the trial court granted DCFS guardianship with the right to place. There is no case law or statutory definition that addresses the meaning of "right to place." The Act defines "[g]uardianship of the person" as

> "the duty and authority to act in the best interests of the minor, subject to residual parental rights and responsibilities, to make important decisions in matters having a permanent effect on the life and development of the minor and to be concerned with his or her general welfare. It *includes* but is not necessarily limited to:
>
> * * *
>
> (c) *the rights and responsibilities of legal custody* except where legal custody has been vested in another person or agency." (Emphases added.) 705 ILCS 405/1-3(8)(c) (West 2016).

Legal custody is vested by court order. See 705 ILCS 405/1-3(9) (West 2016) (" 'Legal custody' means *the relationship created by an order of court* in the best interests of the minor which imposes on the custodian the responsibility of physical possession of the minor and the duty to protect, train and discipline him and to provide him with food, shelter, education and ordinary medical care, except as these are limited by residual parental rights and responsibilities and the rights and responsibilities of the guardian of the person, if any." (Emphasis added.)).

9

¶ 20   Here, the trial court did not grant legal custody to either party, and therefore, DCFS had the rights and responsibilities of legal custody of M.T. Before respondent loses his superior right to custody, the trial court must show that respondent was unfit, unable, or unwilling to care for M.T. under section 2-27(1). Instead, the court found respondent fit and appointed DCFS as guardian and, essentially, custodian of M.T. We also note that the court never made a determination that respondent was unable or unwilling to care for M.T. We determine that the trial court abused its discretion when it appointed DCFS as guardian with the right to place. We vacate the trial court's dispositional order and remand this cause for a new dispositional hearing.

¶ 21                                              CONCLUSION

¶ 22   For the foregoing reasons, we vacate the trial court's dispositional order and remand this cause for further proceedings.

¶ 23   Order vacated; cause remanded.