# Illinois Official Reports

## Appellate Court

---

### *In re M.G.*, 2018 IL App (3d) 170591

---

| | |
|---|---|
| Appellate Court Caption | *In re* M.G., K.G., and C.G., Minors (The People of the State of Illinois, Petitioner-Appellee, v. Sommer L., Respondent-Appellant). |
| District & No. | Third District<br>Docket Nos. 3-17-0591, 3-17-0592, 3-17-0593 cons. |
| Filed<br>Modified upon<br>denial of rehearing | January 31, 2018<br><br>February 28, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Tazewell County, Nos. 16-JA-39, 16-JA-40, 16-JA-41, the Hon. Kirk D. Schoenbein, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Louis P. Milot, of Peoria, for appellant.<br><br>Stewart J. Umholtz, State's Attorney, of Pekin (Patrick Delfino, Lawrence M. Bauer, and Justin A. Nicolosi, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>Aimee E. Dluski, of Pekin, guardian *ad litem*. |

Panel                    JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Presiding Justice Carter and Justice Wright concurred in the judgment and opinion.

**OPINION**

¶ 1        Respondent mother appealed from a Tazewell County circuit court order finding her dispositionally unfit and terminating the wardship of the minors.

¶ 2                                        FACTS

¶ 3        The State filed shelter care petitions for the three minors, M.G., K.G., and C.G., alleging neglect in that their environment was injurious to their welfare pursuant to section 2-3 of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b) (West 2016)). The petitions alleged that on March 23, 2016, the minors' father, Kevin G., and his paramour, Elizabeth H., were under the influence of drugs in front of the minors and possessed controlled substances in the home. The petition alleged that the respondent mother, Sommer L., had previously been involved in juvenile court and could not provide minimal parenting because she did not have permanent housing. The mother admitted the allegation made against her in paragraphs f and g of the petition. A temporary custody order was entered, and thereafter the minors were adjudicated neglected.

¶ 4        A dispositional report filed with the court on July 1, 2016, recommended that the mother complete a parenting class, complete individual therapy, and continue weekly, unsupervised visits. At the dispositional hearing, the State argued that the father was unfit and the mother was unable. The State asked for drug drops and a substance abuse assessment as to both the mother and the father. The mother's counsel acknowledged that the mother had no stable housing and stated that the mother had no problem with doing the drug drops. The circuit court found the father to be unfit. The mother was found to be fit but unable.[1] The circuit court adopted all of the recommendations in the dispositional report and, in addition, ordered the mother to obtain a substance abuse assessment, perform two random drug drops each month, and obtain stable housing. At the December 16, 2016, permanency review hearing, the father was found to be fit. The court did not make any change in the status of the mother.

¶ 5        The June 2017 permanency review report indicated that the mother was not making satisfactory progress or reasonable efforts toward the goal of the minors returning home. The report indicated the mother had been arrested on March 3, 2017, along with her paramour, for methamphetamine manufacturing. The mother had completed only one of the twice-monthly drug drops, on March 20, 2017, which was negative. She had been assessed by Gateway Drug and Alcohol (Gateway), but the mother reported to the caseworker that Gateway did not

---

[1]In the dispositional order, the circuit court checked the box that said that the mother was fit, able, and willing to care for the minors but also indicated that the mother was unwilling to care for the minors because she lacked stable housing. At the permanency review hearing on August 10, 2017, the circuit court clarified that it had found the mother to be unable to care for the minors.

recommend treatment. The caseworker contacted Gateway and was informed that the mother had completed the assessment, but was recommended for basic outpatient treatment for three days a week and was unsuccessfully discharged for never attending a class. The mother had not completed parenting classes, reportedly due to transportation issues. She was successfully discharged from counseling. Her visits with the minors were supervised since the arrest.

¶ 6    At the permanency review hearing on August 10, 2017, the caseworker testified that she did not have any paperwork from Gateway but she had just taken over the case. Her supervisor, Kristi Heskett, testified that the mother had been unsuccessfully discharged from Gateway but they had yet to receive the report from Gateway. Heskett also testified that the former caseworker offered bus passes to the mother upon request but the mother never requested them. The mother testified that she was assessed at Gateway, was told she did not need treatment, but was going to go anyway because it would not hurt. However, she then decided to work on other things that were required. The mother testified that she did not do the parenting classes or drug drops due to transportation issues. The mother had told the caseworker that she could use a bus pass, but the caseworker never gave her one. The mother testified that she was not working and she lived with her daughter. Either her daughter or her mother, who both had cars, would drive the mother to the grocery store and the minors' school events.

¶ 7    The circuit court found that the mother had not made reasonable progress toward the minors' return home. It found the mother to be dispositionally unfit because she had been arrested for methamphetamine, she failed to complete treatment recommended after the substance abuse assessment, and she continued to associate with her paramour who was going to prison for methamphetamine. The father, however, remained fit and had made reasonable efforts and progress toward return home. Custody and guardianship of the minors were restored to the father, and the wardship was terminated. The mother appealed.

¶ 8                                                    ANALYSIS

¶ 9    As an initial matter, the mother argues that the dispositional order was void because she was not found unfit, unable, or unwilling at the dispositional hearing. After the minors were adjudicated neglected, the Act required the circuit court to hold a dispositional hearing to, as an initial matter, determine whether it was in the best interests of the minors and the public that the minors be made wards of the court. 705 ILCS 405/2-21(2), 2-22(1) (West 2016); *In re M.M.*, 2016 IL 119932, ¶ 17. The circuit court made such a finding in this case and made the minors wards of the court. Contrary to the mother's argument, both the oral pronouncement and the trial court's written order demonstrate that the mother was found fit but unable to care for the minor children due to the mother's lack of suitable housing. The record further demonstrates that the mother never corrected this situation during the pendency of the proceedings.

¶ 10   Pursuant to the Act, once a minor is made a ward of the court, the court has to determine the disposition that best serves the health, safety, and interests of the minor and the public. 705 ILCS 405/2-22(1) (West 2016). There are four basic types of dispositional orders with respect to a ward of the court: (1) continued in the care of the minor's parent, guardian, or legal custodian; (2) restored to the custody of the minor's parent, guardian, or legal custodian; (3) ordered partially or completely emancipated; or (4) placed in accordance with section 2-27 of the Act. *Id.* § 2-23(1)(a); *M.M.*, 2016 IL 119932, ¶ 18. In this case, the minors were placed in

the custody and guardianship of the Department of Children and Family Services (DCFS) in accordance with section 2-27(1) of the Act (705 ILCS 405/2-27(1) (West 2016)).

¶ 11　　Section 2-27(1) of the Act does not authorize placing a ward of the court with a third party absent a finding of parental unfitness, inability, or unwillingness to care for the minor. *M.M.*, 2016 IL 119932, ¶ 31. In this case, the mother admitted the allegations set forth in the petition, namely that she was unable to parent the children because she lacked suitable housing. The circuit court did find the father unfit and the mother unable, in its dispositional order entered July 1, 2016, to take custody of the minors and therefore granted custody and guardianship of the minors to DCFS. Those dispositional findings are not against the manifest weight of the evidence. See *In re C.H.*, 2017 IL App (3d) 160729, ¶ 8 (an appellate court will reverse a trial court's dispositional findings when they are against the manifest weight of the evidence or the trial court abused its discretion in fashioning an improper dispositional order).

¶ 12　　The mother also argues that the circuit court had no jurisdiction or authority to make a finding of unfitness at the permanency review hearing and that the mother had no notice that she would be subject to a dispositional determination at the permanency review hearing.

¶ 13　　"[O]nce a child has been made a ward of the court and a dispositional order has been entered, the court may, at any time, vacate the original dispositional order and enter any other dispositional order that it could have entered under section 2-23(a) of the Act ***." *In re Austin W.*, 214 Ill. 2d 31, 44 (2005), *abrogated on other grounds by In re M.M.*, 2016 IL 119932. Section 2-28 of the Act governs court proceedings that review the original dispositional order, which are known as permanency review hearings. 705 ILCS 405/2-28 (West 2016); *In re S.M.*, 223 Ill. App. 3d 543, 547 (1992). Permanency review hearings pursuant to section 2-28 of the Act are simply further dispositional hearings, conducted in accordance with section 2-22(1) of the Act, which governs how dispositional hearings are to be held. *In re C.H.*, 398 Ill. App. 3d 603, 606-07 (2010). Since the mother had notice of the permanency review hearing and testified at the hearing, she had sufficient notice of the proceedings, and the circuit court had the authority to vacate the mother's prior finding of fitness and enter an order of unfitness based upon the evidence.

¶ 14　　The mother further contends that when the circuit court terminated the wardship at the permanency review hearing, it relinquished authority to make fitness findings and guardianship determinations. The mother argues that the orders finding her unfit, naming the father as the sole guardian, terminating the wardship, and closing the case were all made simultaneously. The State contends that the order terminating the wardship was the last order made by the circuit court, so the court had jurisdiction to make the other orders prior to the termination.

¶ 15　　Dispositional decisions, such as findings of unfitness and determinations of guardianship, are statutorily predicated upon the court first making the minors wards of the court. *In re C.L.*, 384 Ill. App. 3d 689, 697 (2008). Thus, any such orders entered without a wardship are void. *Id.* However, once minors have been made wards of the court, the termination of a wardship does not automatically terminate all prior orders of custodianship or guardianship. 705 ILCS 405/2-31(2) (West 2016); see *In re M.M.*, 337 Ill. App. 3d 764, 777-78 (2003) (section 2-31(2) of the Act specifically authorizes a court to close a juvenile case where there is an open order of guardianship). In this case, the circuit court found the mother dispositionally unfit, made the father the sole guardian and custodian, and then terminated the wardship, albeit all at one court proceeding. The circuit court had jurisdiction until it entered the order terminating the

- 4 -

wardship, so we find that the circuit court still had jurisdiction when it found the mother to be unfit.

¶ 16    Substantively, the mother argues that the circuit court erred when it found her to be dispositionally unfit. The mother contends that the circuit court relied on incorrect information and improper evidence, specifically that there was no finding that the mother was unable to care for the minors at the dispositional hearing, there was no order for drug drops, and the circuit judge speculated as to the circumstances of her arrest for methamphetamine when she was entitled to a presumption of innocence.

¶ 17    As we have already noted, the record supports the finding that the mother was unable to care for the minors. Also, the written dispositional order clearly requires the mother to perform random drug drops twice a month. The mother argues that the written order is in conflict with the judge's oral pronouncement, so the oral pronouncement should prevail. See *In re R.W.*, 371 Ill. App. 3d 1171, 1173 (2007) (when a trial court's oral pronouncement is in conflict with its written order, the oral pronouncement prevails). We find, though, no conflict between the oral pronouncement and the written order. At the dispositional hearing, the State recommended drug drops for the mother, and the mother's counsel stated that the mother had no problem with the drug drops. The circuit court did not make any oral pronouncements regarding drug drops to the contrary.

¶ 18    With respect to the mother's arrest, the permanency report submitted to the circuit court indicated that the mother and her paramour had been arrested for methamphetamine manufacturing. The mother also testified as to her arrest and the fact that the case was still pending. The circuit court acknowledged the mother's arrest for methamphetamine but also acknowledged her presumption of innocence. The circuit court referenced the mother's arrest in the context of her continued relationship with her paramour, who, the mother had testified, was likely to plead guilty to the crime and go to prison. There is no indication that the circuit court improperly considered the mother guilty of the crime charged.

¶ 19    Lastly, the mother argues that the circuit court erred in terminating the wardship and closing the case. The mother contends that the circuit court failed to specifically explain how it was in the best interest of the minors to terminate the wardship, so the circuit court's findings did not comply with section 2-31(2) of the Act. The State contends that the decision to terminate the wardship and close the case was not against the manifest weight of the evidence.

¶ 20    Whether a circuit court failed to follow statutory requirements is a question of law that is reviewed *de novo*. *In re Aaron R.*, 387 Ill. App. 3d 1130, 1138 (2009). As noted above, an appellate court will only reverse a trial court's dispositional findings when they are against the manifest weight of the evidence or the trial court abused its discretion in fashioning an improper dispositional order. Under section 2-31(2), a trial court may only terminate proceedings "[w]henever the court determines, and makes written factual findings, that health, safety, and the best interests of the minor and the public no longer require the wardship of the court." *Id.* (quoting 705 ILCS 405/2-31(2) (West 2016)).

¶ 21    In this case, the circuit court made the written factual findings that the father remained fit and had made reasonable efforts and progress toward the return of the minors. The circuit court also made the explicit oral ruling that it was no longer in the best interest of the minors to remain wards of the court. In making that decision, the circuit court relied on the testimony in court, but also on the permanency review report and its addendum that indicated that the father had been restored to fitness and remained fit, had successfully obtained appropriate housing

for himself and the minors, had complied with and completed all objectives, and had successfully corrected the conditions that led to DCFS involvement. Those findings were sufficient to comply with the requirements of section 2-31(2) of the Act. See *In re K.S.*, 317 Ill. App. 3d 830, 833 (2000). In addition, we find that the circuit court's factual findings were not against the manifest weight of the evidence and that there was no abuse of discretion.

¶ 22                                              CONCLUSION

¶ 23          The judgment of the circuit court of Tazewell County is affirmed.

¶ 24          Affirmed.