**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190501-U

Order filed April 29, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| *In re* M.M., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| a Minor | ) | Tazewell County, Illinois, |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-19-0501 |
| | ) | Circuit No. 17-JA-23 |
| v. | ) | |
| | ) | |
| Michael M., | ) | Honorable |
| | ) | Timothy J. Cusack, |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Carter and Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The trial court's findings complied with section 2-31(2) of the Juvenile Court Act of 1987.

¶ 2    The respondent, Michael M., appeals the trial court's order vacating its order designating the Department of Children and Family Services (DCFS) as guardianship administrator over his minor child, M.M. (born August 2005), terminating wardship, and closing the case.

¶ 3                                                      FACTS

¶ 4        In February 2017, DCFS filed a shelter care petition alleging that M.M. was neglected in that his environment was injurious to his welfare. 705 ILCS 405/2-3(1)(b) (West 2016). The petition stated that M.M.'s stepmother and the respondent were mad at him and his sibling, N.M., for failing to do their chores, which included emptying the cat litter box and taking out the garbage. The stepmother yelled at M.M., and M.M. hit her. The stepmother took the dirty cat litter box and dumped it onto M.M.'s bare mattress. The stepmother slapped M.M. in the face. The respondent picked up the garbage and dumped it onto N.M.'s bed and slapped him in the face twice.

¶ 5        When the police arrived, they noticed that both minors had a visible redness in their cheeks and the minors were very upset and crying. M.M. stated that he saw the respondent slap the phone out of N.M.'s maternal grandmother's hand, who is in a wheelchair, when she attempted to call the police to report the incident. Police also noted that the home was filthy. M.M. told DCFS that he endured approximately two years of excessive punishment by the respondent and his stepmother, which included being slapped in the face frequently and being hit with a belt. Some of the incidents left marks. M.M. also stated that his stepmother had dumped bunny litter on his bed in the past. N.M. told police that the dumping of dirty animal litter on their beds as punishment happened more than once and that he was made to sleep in the dirty bed. N.M. also told police that a day or so ago, the respondent turned an entire sofa over on him while he was sleeping on it and that the respondent bent his arm to the point where it felt like it was going to break. The respondent and the stepmother were charged with domestic battery/bodily harm.

¶ 6        The respondent consented to a default judgment on the shelter care petition and adjudicatory and dispositional orders were entered, finding the respondent unfit. The trial court made M.M. a ward of the court and designated DCFS as guardianship administrator with

authorization to place M.M. Thereafter, numerous reports were filed detailing the respondent's lack of progress in this case. For instance, a family counseling session was terminated early due to the respondent being verbally aggressive, a counseling report indicated he had a rigid parenting style and difficulty demonstrating emotional responsiveness toward M.M., he became angry regarding a visitation issue and yelled at a caseworker, he continued to lack control over his emotions despite completing anger management, he talked down to M.M. and often called him names and cursed at him, and he failed to maintain adequate housing. Regarding housing, a caseworker visited his home to complete a safety checklist and noted open piping, hanging exposed wiring, exposed wiring in the bedroom light switches, and some bedrooms had no windows. The caseworker informed him that the checklist could not be completed due to the home not meeting safety requirements. He stated that there was a room that could be used as a bedroom and led the caseworker outside to a shed. The shed had electricity, but no insulation. The court found that he remained unfit and failed to meet minimum parenting standards.

¶ 7        Meanwhile, M.M. had been placed with his paternal grandparents, who had a licensed foster home. Reports indicated that M.M. was thriving in that placement and had no behavioral issues at home or school. Additionally, an improvement in M.M.'s behavior was noted since being brought into care and moving into his grandparents' home. M.M. expressed his preference that he remain with his grandparents. The State and guardian *ad litem* recommended that the court grant the grandparents guardianship over M.M.

¶ 8        In August 2019, DCFS filed a motion to vacate guardianship, terminate wardship, and close the case. DCFS requested that the court transfer guardianship to M.M.'s grandparents (Tazewell County case No. 19-P-227). At the hearing on DCFS's motion, the court took judicial notice of the prior orders and reports that had been submitted and incorporated by reference in DCFS's

motion. The court granted the motion and explained:

"Taking into consideration the 17-JA-23 file as well as the petition [for the appointment of guardianship] that's been filed in 19-P-227 and the statutory factors regarding best interest of the child, I believe it is in the best interest of this child that the guardianship proceed and continue. I do believe that [the respondent] is unable to care for this child specifically for those reasons stated in the earlier reports and that he hasn't gotten himself to a point where he can take care of this child."

¶ 9    A written order followed, which provided:

"1. "It is in the minor's best interest to remain under the care of [his paternal grandparents], and to vacate the order appointing [DCFS] as Guardianship Administrator of the minor.

2. Janet Wakus Ahern, Guardian Administrator for [DCFS], is discharged as guardian of the minor, [M.M.].

3. By separate order, this Honorable Court is appointing [the paternal grandparents] as guardians of the person of the minor.

4. Wardship over [M.M.] is terminated and his case in Juvenile Court is hereby closed."

¶ 10    The respondent appeals.

¶ 11                                ANALYSIS

¶ 12    The respondent argues that the trial court failed to comply with section 2-31(2) of the Juvenile Court Act of 1987 (Act) when it granted DCFS's motion thereby vacating the order appointing DCFS as guardianship administrator, terminating wardship, and closing the case. 705 ILCS 405/2-31(2) (West 2018). Specifically, he argues that the court's written order was

4

insufficient because it failed to reference the (1) health and safety of the minor; (2) best interest of the minor in connection with terminating wardship and closing the case; and (3) health, safety, and best interest of the public. He asks this court to reverse the court's order or remand with directions for the court to make more specific findings. The State argues that he forfeited this contention of error for failing to raise it first in the trial court. Alternatively, the State argues that the court sufficiently complied with the statutory requirements, and even if the court's findings were insufficient, the respondent was not prejudiced.

¶ 13        We first address the State's forfeiture argument. The record in this case demonstrates that the respondent is raising this issue for the first time on appeal. However, as our supreme court has indicated, "where the well-being of a child and parental rights are at issue, we elect not to apply the rule of [forfeiture] and will consider the case on the merits." *In re Madison H.*, 215 Ill. 2d 364, 371 (2005); see *People v. Hughes*, 2015 IL 117242, ¶ 37 (waiver is the voluntary relinquishment of a known right and forfeiture is the failure to timely comply with procedural requirements). Therefore, considering the interests involved, we will address the respondent's contention.

¶ 14        Whether a trial court failed to follow statutory requirements is a question of law, which we review *de novo*. See *In re Aaron R.*, 387 Ill. App. 3d 1130, 1138 (2009). Section 2-31(2) of the Act provides, in relevant part, as follows:

> "Whenever the court determines, and makes written factual findings, that health, safety, and the best interests of the minor and the public no longer require the wardship of the court, the court shall order the wardship terminated and all proceedings under this Act respecting that minor finally closed and discharged." 705 ILCS 405/2-31(2) (West 2018).

¶ 15        This court has previously held that, when a trial court makes written findings pertaining to

a parent's fitness along with an explicit oral ruling "that it was no longer in the best interest of the minors to remain wards of the court[,]" those findings were sufficient to comply with section 2-31(2) of the Act. See *In re M.G.*, 2018 IL App (3d) 170591, ¶ 21 (citing *In re K.S.*, 317 Ill. App. 3d 830, 833 (2000)). In *K.S.*, the court's written order stated that the family was not in need of further monitoring and it was in the best interest of the minor that the case be closed. 317 Ill. App. 3d at 833. The court found that the court's oral findings were more explicit, thereby satisfying section 2-31(2) of the Act. *Id.* (the court orally noted that the children were age appropriate, doing well, and healthy and the issues had been addressed through intervention services provided to the parents). The court declined " 'to remand this cause solely to allow the trial court to reiterate its findings in a written order.' " *Id.* at 834 (quoting *In re Z.Z.*, 312 Ill. App. 3d 800, 804 (2000)). When examining section 2-27(1) of the Act, our supreme court cited this holding in *K.S.* pertaining to section 2-27(2) with approval:

> "The appellate court held that the trial court's oral statements sufficiently stated the basis for the court's finding, and remanding the matter to reiterate the findings in a written order was, therefore, unnecessary. *K.S.*, 317 Ill. App. 3d at 833.

> Likewise, we also conclude that an oral finding on the record may satisfy section 2-27(1), provided that it is explicit and advises the parties of the basis for the court's decision." *Madison H.*, 215 Ill. 2d at 377.

¶ 16 Here, the trial court's written order provided that it was in the best interest of M.M. to remain under the care of his paternal grandparents. On the record, the court explicitly stated that (1) it considered the statutory factors related to the best interest of the minor, (2) the respondent was "unable to care for this child specifically for those reasons stated in the earlier reports," and (3) the respondent "hasn't gotten himself to a point where he can take care of this child."

6

Specifically, the reports indicated, among other things, that the respondent continued to have difficulty controlling his anger, communicated to M.M. in an inappropriate manner, and had inadequate housing. Meanwhile, M.M. was thriving in the care of his grandparents and continually requested to remain in their care. Based on the foregoing, these findings were sufficient to satisfy section 2-27(2) of the Act. See *M.G.*, 2018 IL App (3d) 170591, ¶ 21. We reject the respondent's contention that the court's written finding must contain such specific language. Accordingly, we affirm the court's order vacating guardianship, terminating wardship, and closing the case.

¶ 17                                   CONCLUSION

¶ 18        The judgment of the circuit court of Tazewell County is affirmed.

¶ 19        Affirmed.