**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200444-U

Order filed October 28, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* G.B., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| a Minor | ) | Tazewell County, Illinois. |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-20-0444 |
| | ) | Circuit Nos. 18-JA-158 |
| v. | ) | |
| | ) | |
| COREY B., | ) | Honorable |
| | ) | James A. Mack, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court.
Presiding Justice O'Brien and Justice McDade concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The circuit court did not err in entering a dispositional order in which it made the minor a ward of the court, found respondent was unfit and the minor's mother was fit, and then terminated its wardship of the minor (where the minor's fit mother had been given custody and guardianship of the minor) and closed the case. However, we vacate the portion of the order terminating wardship of the minor due to the circuit court's failure to comply with the requirements of section 2-31(2) of the Juvenile Court Act of 1987 (705 ILCS 405/2-31(2) (West 2020)) and remand for the circuit court to clarify that portion of the order.

¶ 2 Respondent, Corey B., the father of the minor, G.B., appeals from the circuit court's dispositional order finding him unfit to care for G.B., awarding guardianship of the minor to the minor's mother, and closing the case. Respondent argues the circuit court erred in finding him unfit without first making the minor a ward of the court. We affirm in part, vacate in part, and remand with directions.

¶ 3                                    I. BACKGROUND

¶ 4 On September 20, 2018, the State filed a juvenile petition for wardship of G.B., alleging that the minor was neglected in that the minor's environment was injurious to the minor's welfare pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b) (West 2018)). In paragraph A of the petition, the State alleged that the minor's environment was injurious to the minor's welfare because respondent had a history of unresolved domestic violence incidents that had taken place between respondent and his paramour, Kimberly M. Those incidents were described in the petition and had allegedly occurred on June 11, July 24 and 30, and on or about August 24, 2018. In paragraph B of the petition, the State alleged that G.B.'s environment was injurious to his welfare because respondent had been indicated by the Department of Children and Family Services (DCFS) on March 23, 2016, after pushing the minor's mother into a television stand and trying to choke her, with the minor's mother sustaining an injury and the minor witnessing the altercation. The State also alleged in paragraph B that respondent had also been indicated by DCFS on August 10, 2018, due to a domestic incident with Kimberly on June 11, 2018, during which the minor had been present.

¶ 5 On October 18, 2018, the circuit court entered an order indicating that respondent "shall have no unsupervised contact with the minor." On December 13, 2018, the minor's mother filed an answer to the petition, stipulating to the allegations. On December 13, 2018, respondent filed

2

an answer to the petition in which he denied the allegations but stipulated that the allegations in paragraph B could be proven. On May 9, 2019, respondent filed an amended answer stipulating that the allegations in the petition could be proven to the applicable standard of proof.

¶ 6    Also on May 9, 2019, the circuit court placed the matter under court supervision for eight months for services to be successfully completed within that time. Respondent was ordered to complete the following tasks: (1) cooperate with DCFS; (2) execute any authorizations or releases of information requested by DCFS; (3) obtain and maintain stable housing conducive to the safe and healthy rearing of the minor; (4) notify the caseworker within three days of any change in home address, telephone number, employment, or members of the household; (5) provide the caseworker with the name, date of birth, and relationship of any person with whom DCFS had reason to believe a relationship affecting the minor existed or would develop; (6) attend scheduled visits with the minor at the times and places set by DCFS and demonstrate appropriate parenting conduct during those visits; and (7) undergo, comply with, and successfully complete parenting and domestic violence classes, and provide proof of completion. Respondent was not ordered to complete a substance abuse assessment or required to submit to drug drops.

¶ 7    In a review order entered on July 19, 2019, the circuit court found that respondent had not engaged in domestic violence treatment, referencing a status report regarding respondent's level of compliance. In that status report of July 8, 2019, the caseworker indicated that respondent and the minor's mother had completed assessments on November 7, 2018, and the minor's mother did not require services. As for respondent, it was recommended that he complete a substance abuse assessment, submit to random drug screenings at least three times per month, complete domestic violence perpetrator's classes, and complete a parenting education course. In the report,

3

the caseworker indicated that respondent had refused to submit to drug screenings, refused to complete a substance abuse assessment, failed to schedule an intake session for domestic violence services, attended two of three possible parenting skills classes, and attended supervised visits with the minor "in the community" because he had "not presented with a stable residency for visitation" and refused to provide his address to the agency. In the order, the circuit court advised respondent "to cooperate fully or a petition to revoke can be filed."

¶ 8        In a status report regarding intact family services dated September 18, 2019, the caseworker indicated that respondent had been arrested for domestic battery of Kimberly on August 4, 2019. The caseworker further indicated that respondent had, thereafter, allegedly violated the terms of his bail bond by having in-person contact with Kimberly. The caseworker noted that domestic violence incidents between respondent and Kimberly in 2018 had been the cause for this intact family services case to be opened. The caseworker additionally noted that: on August 16, 2019, respondent completed parenting skills training; on August 21, 2019, respondent completed the intake process for the domestic violence perpetrator's course and was placed on the waitlist; respondent remained in denial of perpetrating domestic violence; respondent had refused to submit to random drug screenings since the onset of the case; and respondent continued to participate in weekly agency-supervised visits with G.B. and had engaged with G.B. appropriately. It was recommended that respondent complete domestic violence services, submit to at least three random drug screenings to ensure sobriety, and continue to cooperate with DCFS. At a review hearing on September 27, 2019, respondent failed to appear in court.

¶ 9        In a status report of October 30, 2019, the caseworker indicated that respondent failed to attend the first session of domestic violence classes on October 28, 2019, and continued to refuse

4

to submit to random drug screenings. He continued, however, to appropriately engage with the minor during weekly supervised visits.

¶ 10    On November 13, 2019, the State filed a petition to revoke court supervision in light of respondent's failure to attend domestic violence class on October 28, 2019. In a status report of December 4, 2019, the caseworker indicated that respondent was waitlisted for a family violence intervention program with enrollment anticipated within the month. The caseworker also indicated that while respondent continued to fail to complete randomly scheduled drug testing, he appropriately attended weekly supervised visits with G.B.

¶ 11    On February 27, 2020, respondent filed an answer to the State's petition to revoke the circuit court's supervision of this matter, stipulating that the allegations could be proven to the applicable standard of proof. On the same date, the minor's mother filed an answer in which she stipulated to the allegations of the petition to revoke the court's supervision.

¶ 12    On June 3, 2020, a dispositional report was filed in which the caseworker indicated that the minor resided with his mother and was in good physical health and there were no reported safety concerns. The minor's mother had completed an integrated assessment on November 7, 2018, and no services had been recommended for her. As for respondent, he failed to attend his intake assessment on February 25, 2019, and received an unsuccessful discharge. He completed an intake assessment on August 21, 2019, but missed his domestic violence class on November 4, 2019, and received a second unsuccessful discharge. Respondent also missed classes on January 6, 2020, and February 17, 2020, after again being referred. In March 2020, classes were conducted remotely due to the COVID-19 pandemic, but respondent missed remote classes on March 18 and 25, 2020, and was unsuccessfully discharged for a third time on April 1, 2020. Respondent had not attended any of the drug drops that had been scheduled, with the initial

5

missed drop on November 8, 2018. Respondent had attended supervised visits with the minor prior to the COVID-19 pandemic.

¶ 13　　　　In an addendum to the dispositional report filed August 20, 2020, the caseworker indicated respondent was again referred to perpetrator domestic violence classes and a parenting skills class, which were to begin in September 2020, respondent continued to fail to participate in drug drops. He, however, attended an in-person supervised visit with the minor on July 24, 2020. Respondent was asked to provide the name of someone who could supervise visits so that respondent could have more time visiting with G.B.

¶ 14　　　　On August 21, 2020, an adjudication hearing took place. The attorney for the State requested that the minor be adjudicated neglected. Respondent's attorney indicated respondent had no objection and waived a factual basis for the adjudication. The trial court stated, "[b]ased on the waiver of factual basis and the answers of Mom and Dad, I'll find that the petition has been proven by a preponderance of the evidence." In its written adjudication order (a form order) entered on August 21, 2020, the circuit court indicated it found that the minor was abused or neglected in that the minor's environment was injurious to his welfare and the abuse or neglect was inflicted by respondent, Corey B.

¶ 15　　　　At the dispositional hearing on October 8, 2020, the attorney for the State indicated that the minor's mother was not the reason for the case and that the "problem" was respondent. She contended that respondent had made "zero progress" and requested that he be found unfit and that the case be closed. The attorney for the minor's mother agreed that the minor's mother was fit in that she had taken care of the minor and had done everything that had been asked of her, noting that no services had been recommended for her.

¶ 16    Respondent's attorney indicated that respondent had completed parenting skills training, had been in communication with the caseworker, showed "growth and cooperation," reported that he was back on the waitlist for domestic violence classes, and knew that he needed to do drug drops. Respondent's attorney stated, "at this time, I understand the finding of unfitness, but I would request that the services be Court ordered that are recommended in the report and that the case remain open."

¶ 17    The guardian *ad litem* noted that this was a 2018 case, respondent had been unsuccessfully discharged from domestic violence classes three times, failed to complete any of the 57 random drug drops that had been requested, and had "just recently" started visiting the minor again. The guardian *ad litem* recommended that the case be closed.

¶ 18    The circuit court stated:

> "I'm going to find Mom is fit, and the child should stay with Mom. After this much time, I understand, [respondent Corey B.], you're just getting started on your services and trying to get things going here, but we've been going for over a year and a half. The time to start would have been a year and a half ago, and we might not even been back here in court, and this could have been completed already. At this point in time, I don't see much reason in the court case continuing on. If you want to continue on in your services, you can do that, and do that on your own time and set it up for yourself. And you can petition for visitation or parenting time with G.B. up in F Court [presumably, in family court]; that's where it should be addressed at. I am going to close the case out. That's the appropriate thing to do. The agency's made reasonable efforts. And that will conclude this case."

7

¶ 19     In its written dispositional order (a form order) entered on October 8, 2020, in the initial section of the written order, the circuit court indicated that having considered the evidence and the dispositional report, it found: (1) it was in the best interest of the minor to make the minor a ward of the court; (2) the minor's mother was fit; (3) respondent was unfit in that he failed to complete services, had been unsuccessfully discharged from domestic violence classes for the third time, missed 57 drug drops, and had just initiated visits recently; (4) reasonable efforts and appropriate services aimed at family reunification had been made to keep the minor in the home and the health, welfare, and safety of the minor was not compromised by leaving the minor in the home "with mom"; (5) the service plan was appropriate; (6) services which hade been delivered and were to be delivered were appropriate; (7) the permanency goal was appropriate; and (8) DCFS was to develop a permanency goal in conformity with the dispositional order. Thereafter, in the next section, the written dispositional order indicated, "[t]herefore, it is in the best interest of the minor that the Court orders" that: (1) the petition is granted; (2) the minor is adjudicated neglected; (3) the minor is not made a ward of the court; (4) custody of the minor is placed with the minor's mother; and (5) guardianship of the minor remains with the minor's mother. The order then indicated, "case closed."

¶ 20     Respondent appealed the dispositional order.

¶ 21                                II. ANALYSIS

¶ 22      On appeal, the respondent argues the circuit court erred in finding him unfit and awarding custody and guardianship to the minor's mother without first making the minor a ward of the court. Respondent contends the circuit court must have checked the wrong box in the initial portion of the dispositional order that indicated that it was in the best interest of the minor to make the minor a ward of the court because that finding was "opposite" to the subsequent

indication in the same order that it was in the best interest of the minor that the court order that "minor is not made a ward of the court." Respondent also contends the finding of wardship was "also opposite to the entirety of the transcript of the dispositional hearing," noting neither party nor the circuit court had made any reference to wardship at the dispositional hearing. Respondent argues the circuit court, therefore, did not intend to make the minor a ward of the court and, thus, exceeded its authority in making fitness/unfitness findings and awarding guardianship when the minor was not, in fact, a ward of the court. Respondent requests that we vacate portions of the circuit court's written dispositional order, including, *inter alia*, the finding it was in the best interest of the minor to make the minor a ward of the court, the finding that respondent was unfit, the placement of the minor in the custody of his mother, and the continuance of guardianship with the minor's mother.

¶ 23     The State argues that respondent has forfeited any issue as to the trial court's failure to orally pronounce that it was making the minor a ward of the court because respondent failed to object in the circuit court and did not raise the issue in a posttrial motion. Alternatively, the State indicates that it "agrees that an error occurred" by the circuit court finding respondent unfit without first making the minor a ward of the court and failing to clearly decide whether the minor was a ward of the court. The State contends the appropriate remedy in this case is to remand to the circuit court because "the trial court's finding of respondent's unfitness and awarding [of] guardianship was premature, as it occurred prior to finding that it was in the best interest of the minor that he be made a ward of the court."

¶ 24     We first address the State's forfeiture argument. In his reply, respondent notes that he raised the issue of wardship in the circuit court, arguing that the minor should be made a ward of the court. He concedes that if the minor had been made a ward of the court, then the circuit

9

court's findings of fitness (finding him unfit and the minor's mother fit) and the grant of guardianship (to the minor's mother) would have been appropriate. Although respondent did not object to the trial court's ruling in this case and did not file a post-judgment motion, respondent contends on appeal that forfeiture does not serve the interest of justice. Considering the interest involved in this matter, we consider the merits of respondent's contentions on appeal. See *In re Madison H.*, 215 Ill. 2d 364, 371 (2005) ("where the well-being of a child and parental rights are at issue, we elect not to apply the rule of [forfeiture] and will consider the case on the merits").

¶ 25     Whether the circuit court failed to follow the statutory requirements under the Act is a question of law, which is reviewed *de novo*. See *In re Aaron R.*, 387 Ill. App. 3d 1130, 1138 (2009) (citing *In re Jaime P.*, 223 Ill. 2d 526, 532 (2006) ("an issue of statutory interpretation is a question of law subject to *de novo* review"). Under the Act, at the adjudicatory hearing, the court "shall first consider only the question whether the minor is abused, neglected or dependent." 705 ILCS 405/2-18 (West 2020). If the minor is adjudicated abused or neglected, the case will proceed to a dispositional hearing, at which "the court shall determine whether it is in the best interests of the minor and the public that he be made a ward of the court," and, if so "the court shall determine the proper disposition best serving the health, safety and interests of the minor and the public." *Id.* § 2-22(1). The court also shall consider the permanency goal set for the minor, the nature of the service plan for the minor and the services delivered and to be delivered under the plan. *Id.*

¶ 26     In this case, after the minor was adjudicated neglected, "the Act required the circuit court to hold a dispositional hearing to, as an initial matter, determine whether it was in the best interests of [G.B.] and the public that [G.B.] be made [a] ward[] of the court." See *In re M.G.*, 2018 IL App (3d) 170591, ¶ 9 (citing 705 ILCS 405/2-21(2), 2-22(1) (West 2016)). Following

10

the dispositional hearing, the circuit court made such a determination and made the minor a ward of the court. While the court's oral pronouncement was silent on the issue of wardship, its written dispositional order clearly stated that the circuit court found that "[i]t is consistent with the health, welfare and safety of the minor and in the best interest of the minor to make the minor a ward of the [c]ourt." At the time of the dispositional hearing, the minor was living with his mother but was consistently visiting with respondent who was not making progress in completing services.

¶ 27    When a trial court's oral pronouncement is in conflict with its written order, the oral pronouncement controls. *In re K.L.S.-P.*, 381 Ill. App. 3d 194, 195 (2008); *In re R.W.*, 371 Ill. App. 3d 1171, 1173 (2007). Contrary to the parties' contentions on appeal, the circuit court's written dispositional order in no way "conflicted with" or was "opposite" of its general oral pronouncement that it "was going to find Mom is fit, and the child should stay with Mom." The circuit court did not discuss wardship in its broad oral statements regarding its resolution of this case and, instead, specifically addressed the issue of wardship in its written dispositional order. Thus, there was no conflict between the circuit court's oral statements and its written order regarding wardship.

¶ 28    Additionally, from our review of the circuit court's dispositional order, there appears to be no "self-conflict" within that order regarding wardship. Pursuant to the Act, if a circuit court makes a minor a ward of the court, "it shall determine the proper disposition best serving the health, safety[,] and interest of the minor and the public." 705 ILCS 405/2-22(1) (West 2020). The Act authorizes four possible dispositions, three of which do not involve placing a minor with a third party. *In re M.M.*, 2016 IL 119932, ¶¶ 18, 24 (the four dispositions regarding a ward of the court are: (1) continuing the minor in the custody of his or her parent, guardian, or legal

11

custodian; (2) restoring the minor to the custody of his or her parent, guardian, or legal custodian; (3) ordering the minor partially or completely emancipated; or (4) placing the minor with someone other than his or her parent, guardian, or legal custodian in accordance with section 2-27 of the Act). Prior to committing a minor to the custody of a third party, such as DCFS, a trial court must first determine whether the parent is unfit, unable, or unwilling to care for the child, and whether the best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents. 705 ILCS 405/2-27(1) (West 2020).

¶ 29        Here, after making G.B. a ward of the court, the circuit court appropriately next determined whether the minor's parents were fit or unfit. See *M.G.*, 2018 IL App (3d) 170591, ¶ 15 ("[d]ispositional decisions, such as findings of unfitness and determinations of guardianship, are statutorily predicated upon the court first making the minors wards of the court"). The circuit court found that the minor's mother was fit and that respondent was unfit. Only after making these findings of fitness/unfitness could the circuit court then determine the proper disposition best serving the health, safety and interests of the minor. See 705 ILCS 405/2-22(1), 2-23(1)(a) (West 2020). It appears that in light of its findings that the minor's mother was fit, the circuit court, thereafter, made the minor's mother the sole custodian and guardian of G.B., ordered that G.B. not be made a ward of the court, in essence terminating its brief wardship of G.B., and closed the case. See *M.M.*, 2016 IL 119932 ¶ 31 (the Act does not permit the placement of a child with a third party absent a finding of parental unfitness, inability, unwillingness to care for the child).

¶ 30        Based on the record in this case, there is no merit to respondent's contention that the trial court failed to make the minor a ward of the court prior to making its fitness and guardianship determinations. However, given the nature and wording of the form dispositional order used by

the circuit court, we cannot say that the circuit court's findings were clear in relation to its termination of wardship. Under section 2-31(2) of the Act, "when the court determines, and makes written factual findings, that the health, safety, and the best interests of the minor and the public no longer require the wardship of the court, the court shall order the wardship terminated and all proceedings under this Act respecting that minor finally closed and discharged." See 705 ILCS 405/2-31(2) (West 2020). Although it appears that the circuit court terminated its wardship of G.B. by checking the box that the minor is "not made ward of the court" after previously making him a ward of the court and then closing the case, we vacate that portion of the order and remand for the circuit court to clarify its termination of wardship and to make the requisite written factual findings in compliance with section 2-31(2) of the Act. See *id.*

¶ 31                                    III. CONCLUSION

¶ 32        The judgment of the circuit court of Tazewell County is affirmed in part, vacated in part, and cause is remanded with directions.

¶ 33        Affirmed in part and vacated in part; cause remanded.