NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190903-U

NO. 4-19-0903

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 22, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* J.C. and N.J., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Champaign County |
|       Petitioner-Appellee, | ) | No. 19JA55 |
|       v. | ) | |
| Larry J., | ) | Honorable |
|       Respondent-Appellant). | ) | Adam M. Dill, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Knecht and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*: Respondent forfeited his challenge to the circuit court's wardship finding, and the circuit court did not err by removing the minor child's custody from respondent.

¶ 2    In September 2019, the State filed a petition for adjudication of wardship as to N.J. (born in April 2017), the child of respondent, Larry J., and Tish A. Tish had another child, J.C. (born in May 2010), who was included in the wardship petition. However, Tish and J.C. are not parties to this appeal. At a November 2019 adjudicatory hearing, respondent waived his right to the hearing, and Tish stipulated N.J. was neglected as alleged in the wardship petition. The Champaign County circuit court adjudicated N.J. neglected. After the November 2019 dispositional hearing, the court (1) found respondent unfit and unable to care for, protect, train, or discipline N.J.; (2) made N.J. a ward of the court; and (3) appointed the Department of Children and Family Services (DCFS) as N.J.'s guardian and custodian.

¶ 3        Respondent appeals, contending the circuit court erred by (1) making N.J. a ward of the court and (2) removing custody of N.J. from respondent. We affirm.

¶ 4                              I. BACKGROUND

¶ 5        The first three counts of the State's September 2019 petition for the adjudication of wardship pertained to J.C. The fourth count alleged N.J. was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2018) (as amended by Pub. Act 101-79 (eff. July 12, 2019))), in that his environment was injurious to his welfare when he resided with Tish because said environment exposed N.J. to excessive corporal punishment of his sibling. At a November 2019 hearing, the circuit court accepted Tish's stipulation and admission N.J. was neglected as alleged in the fourth count of the wardship petition. Respondent had waived his right to an adjudicatory hearing.

¶ 6        On November 21, 2019, the circuit court held the dispositional hearing. The State presented a November 2019 DCFS service plan and the dispositional report. Respondent testified on his own behalf and so did Tish. The guardian *ad litem* presented the testimony of Jessica Firmand, an employee of the Center for Youth and Family Services.

¶ 7        The November 2019 service plan required respondent to obtain a counseling assessment, a domestic violence assessment, and participate in any recommended treatment. Respondent also needed to complete parenting classes and cooperate with the Center for Youth and Family Services and treatment providers.

¶ 8        The dispositional report stated the reason for DCFS's involvement was J.C. had scabbed, red, and raised bruises all over his body and he reported the bruises were from Tish "whooping" him with an electrical cord. J.C. reported it had also happened to N.J. before but did not provide any details. Both J.C. and N.J. were removed from Tish and respondent's home the

day after J.C.'s September 12, 2019, report of his injuries. Respondent and Tish continued to live together in a studio apartment. As to the incident, Tish stated she was not trying to inflict wounds on J.C. Tish explained she was trying to "whoop" J.C.'s bottom when he flipped onto his side, which resulted in him getting hit in places she did not intend to hit. Tish admitted she normally "whoops" J.C. with a belt. Tish further stated J.C.'s behavior was out of control and she did not know how to handle him. Since N.J.'s removal from them, Tish and respondent had joint weekly visits with N.J., and they had only missed one.

¶ 9        As to respondent, the dispositional report noted he had two adult daughters. A woman from a prior relationship had obtained an order of protection against him. Respondent explained he got into an argument with the woman when she stole all of his furniture during a breakup. The argument resulted in her calling the police on him and obtaining an order of protection. Additionally, due to complications from diabetes, he had his right leg amputated below the knee. His sole source of income was social security due to the amputation. Respondent had a criminal history for selling drugs but reported he had not been on parole or probation since 2014 or 2015. While respondent sold drugs, he never tried them. He also reported being arrested in September 2019 but the charges were dismissed. Respondent further stated he was arrested in October 2017 for unlawful restraint and causing child endangerment. As to the situation that brought N.J. into care, respondent felt Tish was not appropriately disciplining J.C. from the beginning because her time outs were not effective. He felt disciplining J.C. was her responsibility because he was her son. In his opinion, Tish should have continued to use the belt instead of the extension cord. Respondent made it clear he believes physical punishment is acceptable. He stated N.J. has not yet needed discipline. Respondent also many times blamed J.C. and his behavior for the reason for DCFS's involvement.

¶ 10        Regarding N.J., the report noted he was two years old and in good health. He was a "happy, alert, outgoing and active young boy." He appeared to be comfortable and bonded with his foster parents.

¶ 11        Tish denied ever striking N.J. She also testified about why the one visit was missed. With the missed visit, Tish testified she did call back a second time to say she was not coming.

¶ 12        Respondent testified the woman who stole his furniture went to a women's shelter and obtained an order of protection to prevent respondent from recovering his furniture. He never went to court on the order of protection. Respondent denied any history of domestic violence. Respondent also testified he disciplined his adult children by taking things away from them. He denied ever putting a hand on them. According to respondent, N.J. was not old enough to be disciplined. He denied being a supporter of corporal punishment. Respondent also denied disciplining J.C. He did not want Tish to "whoop" J.C., period, but noted J.C. was not his child.

¶ 13        Firmand testified she was present for respondent's interview for his integrated assessment. During the interview, respondent agreed with using belts for discipline. From how respondent explained discipline, Firmand interpreted his answers to mean he firmly supported corporal punishment. She explained respondent kept talking about disciplining and how it was appropriate to spank, hit, or whip a child with a belt as discipline.

¶ 14        At the conclusion of the hearing, the circuit court made N.J. a ward of the court and found both parents were unfit and unable to care for, protect, train, or discipline him. In finding respondent unfit, the court noted respondent's criminal history was part of its concern. The court also voiced concern about respondent's attitude J.C.'s discipline was none of

respondent's business.  It showed respondent also lacked insight about how serious the incident

was.  The court also noted respondent was still with Tish.  The court placed N.J.'s custody and

guardianship with DCFS.  On November 25, 2019, the circuit court filed its written dispositional

order.

¶ 15         On December 20, 2019, respondent filed a timely notice of appeal in sufficient

compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017).  See Ill. S. Ct. R. 660(b)

(eff. Oct. 1, 2001) (providing the rules governing civil cases govern appeals from final

judgments in all proceedings under the Juvenile Court Act, except for delinquency cases).  Thus,

this court has jurisdiction under Illinois Supreme Court Rule 304(b)(1) (eff. Mar. 8, 2016).  See

*In re Austin W.*, 214 Ill. 2d 31, 43-44, 823 N.E.2d 572, 580 (2005), *abrogated on other grounds*

*by In re M.M.*, 2016 IL 119932, ¶ 31, 72 N.E.3d 260 (noting "dispositional orders are generally

considered 'final' for the purposes of appeal").

¶ 16                                II. ANALYSIS

¶ 17         Cases involving neglect allegations and the adjudication of wardship are

*sui generis*, and thus, courts must decide them based on their unique circumstances.  *In re A.P.*,

2012 IL 113875, ¶ 17, 981 N.E.2d 336.  The Juvenile Court Act provides a two-step process the

circuit court must utilize to decide whether the minors should become wards of the court.  *A.P.*,

2012 IL 113875, ¶ 18.  Step one of the process is the adjudicatory hearing, at which the court

considers only whether the minors are abused, neglected, or dependent.  See 705 ILCS 405/2-

18(1) (West 2018); *A.P.*, 2012 IL 113875, ¶ 19.  The second step is the dispositional hearing.

*A.P.*, 2012 IL 113875, ¶ 21.  At the dispositional hearing, the circuit court first determines

whether it is in the child's and public's best interests the child be made a ward of the court.  705

ILCS 405/2-22(1) (West 2018).  If the court finds the child should be made a ward of the court,

then the court determines the proper disposition best serving the health, safety, and interests of the minor and the public. 705 ILCS 405/2-22(1) (West 2018). On appeal, respondent challenges the circuit court's findings (1) N.J. should be made a ward of the court and (2) N.J.'s custody should be removed from respondent.

¶ 18                                         A. Wardship

¶ 19        Respondent contends the circuit court erred by making N.J. a ward of the court. The State asserts respondent did not oppose a finding of wardship in the circuit court. A review of the record confirms the State's assertion, as no one argued N.J. should not be made a ward of the court. Both the State and the guardian *ad litem* asserted N.J. should be made a ward of the court, and Tish accepted the recommendations in the dispositional report, which included N.J. being made a ward of the court. Respondent's counsel only contended respondent was fit to care for N.J. He did not address wardship.

¶ 20        Our supreme court has emphasized one of the two most important tasks a reviewing court undertakes when beginning the review of a case is to determine which issue or issues, if any, have been forfeited. *People v. Smith*, 228 Ill. 2d 95, 106, 885 N.E.2d 1053, 1059 (2008). In *In re William H.*, 407 Ill. App. 3d 858, 870, 945 N.E.2d 81, 91 (2011), the reviewing court found the respondent forfeited on appeal her attempt to raise a challenge to the circuit court's wardship finding where the respondent only argued she was unable to care for the minor and never addressed the matter of wardship. In reaching that finding, the reviewing court noted that, to preserve an alleged error for appellate review in child custody cases, the party must object at trial. *William H.*, 407 Ill. App. 3d at 869-70, 945 N.E.2d at 91. Additionally, " '[a] party is estopped from taking a position on appeal that is inconsistent with a position the party took in the trial court.' " *William H.*, 407 Ill. App. 3d at 870, 945 N.E.2d at 91 (quoting *In re*

*Stephen K.*, 373 Ill. App. 3d 7, 25, 867 N.E.2d 81, 98 (2007)).  Since respondent did not argue at the dispositional hearing N.J. should not be made a ward of the court, we find respondent has forfeited this issue for review.

¶ 21                                    B. Disposition

¶ 22        Defendant also contends the circuit court erred by removing N.J. from respondent's custody.  The State disagrees.

¶ 23        Section 2-23(1) of the Juvenile Court Act (705 ILCS 405/2-23(1) (West 2018) (as amended by Pub. Act 101-79 (eff. July 12, 2019))) provides for the following kinds of dispositional orders for a ward of the court where the ward was found to be neglected or abused: (1) continued in the custody of his or her parents, (2) placed in accordance with section 2-27 of the Juvenile Court Act (705 ILCS 405/2-27 (West 2018)), (3) restored to the custody of his or her parents, or (4) ordered partially or completely emancipated.  Under section 2-27(1) of the Juvenile Court Act (705 ILCS 405/2-27(1) (West 2018)), the circuit court can remove a minor child's custody from his or her parents only after determining (1) the parents are either unfit or unable, for some reason other than financial circumstances alone, to care for, protect, train, or discipline the minor child or are unwilling to do so and (2) the minor child's health, safety, and best interests will be jeopardized if the minor child remains in the custody of his or her parents. With a section 2-27 finding of unfitness that does not result in a complete termination of all parental rights, the State's burden of proof is a preponderance of the evidence.  *In re April C.*, 326 Ill. App. 3d 225, 238, 760 N.E.2d 85, 96 (2001).  A reviewing court will reverse the circuit court's determination only if the findings of fact are against the manifest weight of the evidence or if the circuit court committed an abuse of discretion by selecting an inappropriate dispositional order.  *In re J.W.*, 386 Ill. App. 3d 847, 856, 898 N.E.2d 803, 811 (2008).

¶ 24    Respondent notes he already raised two adult daughters, interacted appropriately with N.J., and disavowed the use of corporal punishment.  He contends the evidence (1) did not show N.J.'s safety was jeopardized and (2) did show N.J. was bonded with both of his parents. Respondent claims the removal of N.J. disregarded the uniqueness of the family and disrupted N.J.'s daily life without justification.  However, the other evidence showed respondent was comfortable with disciplining a child with a belt and only felt Tish should not have used the electrical cord.  Thus, the circuit court's concerns about respondent's lack of insight into the severity of the incident with J.C. was supported by the evidence.  Moreover, respondent was still living with Tish, who inflicted the excessive corporal punishment on J.C.  The evidence also showed respondent had a significant criminal history and had an order of protection entered against him.  Additionally, both the dispositional report and the guardian *ad litem* recommended removal of custody and guardianship in this case.  Given the aforementioned facts, the circuit court's finding respondent unfit and unable to care for, protect, train, or discipline N.J. was not against the manifest weight of the evidence.  Furthermore, we find the circuit court did not abuse its discretion by removing N.J. from respondent's custody.

¶ 25                                III. CONCLUSION

¶ 26    For the reasons stated, we affirm the Champaign County circuit court's judgment.

¶ 27    Affirmed.