NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230295-U

NO. 4-23-0295

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 23, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* V.M., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Sangamon County |
| Petitioner-Appellee, | ) | No. 22JA146 |
| v. | ) | |
| Cassandra M., | ) | Honorable |
| Respondent-Appellant). | ) | Dwayne A. Gab, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Harris and Steigmann concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court's finding was not against the manifest weight of the
        evidence.

¶ 2     In July 2022, the State filed a petition for adjudication of wardship as to V.M.

(born in April 2022), the minor child of respondent, Cassandra M., asserting the minor child was

neglected as alleged in three counts. The minor child's father, Paul M., is not a party to this

appeal. He filed a separate appeal, which this court docketed as case No. 4-23-0296. At the

adjudicatory hearing, respondent stipulated the minor child was neglected as alleged in the first

count of the petition. The Sangamon County circuit court accepted the stipulation, found the

minor child was neglected under the petition's first count, and dismissed the other two counts.

After a March 2023 dispositional hearing, the court (1) found respondent unfit, unwilling, or

unable to care for the minor child; (2) made the minor child a ward of the court; and (3) placed

the minor child's custody and guardianship with the Department of Children and Family Services (DCFS).

¶ 3    Respondent appeals, contending the circuit court's finding she was unfit, unable, or unwilling to care for the minor child and granting custody and guardianship of the minor child to DCFS was against the manifest weight of the evidence.

¶ 4                    I. BACKGROUND

¶ 5    The State's July 2022 petition alleged V.M. was neglected pursuant to section 2-3(1)(a) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(a) (West 2022)), in that V.M. was not receiving the proper care and necessary supervision for her well-being because her parents failed to make a proper care plan for her supervision and medical care (count I). It also contended V.M. was neglected under section 2-3(1)(b) of the Juvenile Court Act (705 ILCS 405/2-3(1)(b) (West 2022)), in that her environment was injurious to her welfare as evidenced by her parents' (1) refusal to cooperate with medical personnel regarding required medical care education for V.M. (count II) and (2) inability to care for V.M.'s specialized medical needs (count III).

¶ 6    In December 2022, the adjudicatory hearing began with the State calling respondent as its first witness. Due to time constraints, the circuit court continued the hearing in the middle of respondent's testimony. The court resumed the hearing in January 2023. Respondent finished her testimony, and the State called Paul as its second witness. After Paul's testimony concluded, respondent expressed a desire to stipulate to count I of the State's wardship petition. The State gave a factual basis for count I, which noted V.M. had difficulty feeding and getting necessary nutrients with normal feeding techniques. Both respondent and Paul agreed to gastronomy tube (G-tube) surgery for V.M. The medical professionals requested both

- 2 -

respondent and Paul learn how to properly feed V.M. with the G-tube and to stay overnight at the hospital to handle feedings. Respondent tried to learn how to properly feed the child but never stayed overnight. If respondent and Paul did not learn to feed V.M. by the G-tube and with the proper calculations for such feedings, then V.M. would be in danger of malnutrition and dehydration if returned to respondent and Paul's home. The court accepted the stipulation and dismissed counts II and III of the petition against respondent. At respondent's request, the court excused respondent and her counsel from the rest of the dispositional hearing.

¶ 7        After respondent left the courtroom, the circuit court resumed the adjudicatory hearing. The State called the following medical professionals who cared for V.M. while she was in the neonatal intensive care unit: (1) Dr. Ginger Darling, a neonatologist; (2) Dharmendra Nimavat, a neonatologist; (3) Rhonda Howard, a nurse; and (4) Christina Sheets, a nurse. It also called Jamie Anderson, the DCFS investigator, who looked into a hotline call about V.M. Paul testified on his own behalf and called Heather Ivers, a nurse who also cared for V.M. in the neonatal intensive care unit. At the conclusion of the hearing, the court found V.M. neglected on all three counts against Paul. The court entered the written adjudication order on February 23, 2023.

¶ 8        On March 29, 2023, the circuit court held the dispositional hearing. The State presented the dispositional report with an addendum. The report explained V.M. was born methadone-exposed and was placed in the neonatal intensive care unit, where she stayed for three months due to substance withdrawal, respiratory problems, and feeding difficulties. V.M. was G-tube dependent and required frequent feedings with specialized instructions. Respondent and Paul made statements and engaged in inappropriate actions, suggesting they had difficulties with comprehension and judgment. Serious concerns existed that respondent and Paul would not

follow recommended protocols for feeding V.M. if she was discharged from the hospital to their care.

¶ 9     As to respondent, the report noted she completed the integrated assessment interview in September 2022, during which respondent was reluctant to acknowledge concerns and appeared to minimize problems including the severity of V.M.'s health. A service plan was created requiring respondent to (1) cooperate with DCFS, (2) complete parenting education, (3) participate in ongoing education regarding V.M.'s feeding and care, (4) participate in V.M.'s medical and developmental services, (5) participate in psychiatric care, (6) participate in counseling, (7) participate in substance abuse treatment, and (8) participate in random drug screens.

¶ 10    As to cooperation, the report noted respondent had continually been dishonest, argumentative, accusatory of others, and negative when communicating with her caseworker. Respondent did complete a parenting education program in December 2022. She also completed training to learn feeding skills but presented ongoing deficits in her understanding and consistent application of skills during visits with V.M. On the other hand, respondent had failed to attend the majority of V.M.'s medical and therapy appointments and only recently had started to consistently attend them. Respondent claimed she had never received any messages about appointments, but evidence showed respondent both received and responded to the messages. Respondent had established mental health providers before DCFS's involvement, and the caseworker was still in the process of gathering documentation from respondent's therapists. As to substance abuse treatment, respondent was an established client with Family Guidance Center and was making all of her appointments. Drug screens revealed only prescribed medications.

¶ 11    Regarding visitation, respondent had supervised visits with V.M. twice a week.

Ruth Kirkpatrick, the visitation specialist, reported respondent was very engaged with V.M. during visits but she frequently complained and was quite negative. Kirkpatrick documented she had never experienced a parent to be so negative during a visit. Visits had recently been moved to respondent's home. Respondent's friend, who was the second visit supervisor, had been bringing the food for V.M. instead of respondent supplying it. The friend had also brought a step stool for V.M. that therapy recommended twice for V.M. Respondent had stated she was going to get one. It was reported respondent had parenting skill deficiencies that raised a concern about her ability to provide a safe and stable home for V.M. It was also reported respondent continued to have problems with adjusting the G-tube feedings when V.M.'s feeding amount had increased and occasionally asked her friend for guidance in regard to the machine. DCFS had told respondent she would need to be able to independently care for V.M.

¶ 12　　　　The dispositional report recommended V.M. be made a ward of the court and DCFS be granted custody and guardianship. Respondent did not object to the report's admission and did not present any evidence on her behalf.

¶ 13　　　　During arguments, the State recommended V.M. be made a ward of the court and DCFS be granted custody and guardianship. The guardian *ad litem* concurred with the State's recommendation. Respondent's counsel requested respondent receive custody and guardianship of V.M. Counsel also noted, once respondent learned her friend who attended visits with her "would take away from what she was doing," respondent stopped having the friend attend visits.

¶ 14　　　　On March 29, 2023, the circuit court entered a written dispositional order (1) finding respondent and Paul unfit, unwilling, or unable to care for V.M., (2) making the V.M. a ward of the court, and (3) placing V.M.'s custody and guardianship with DCFS.

¶ 15　　　　On March 30, 2023, respondent filed a timely notice of appeal in sufficient

compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017). See Ill. S. Ct. R. 660(b) (eff. Oct. 1, 2001) (providing the rules governing civil cases govern appeals from final judgments in all proceedings under the Juvenile Court Act, except for delinquency cases). Thus, this court has jurisdiction of respondent's appeal under Illinois Supreme Court Rule 304(b)(1) (eff. Mar. 8, 2016). See *In re Austin W.*, 214 Ill. 2d 31, 43-44, 823 N.E.2d 572, 580 (2005) (noting "dispositional orders are generally considered 'final' for the purposes of appeal"), *abrogated on other grounds by In re M.M.*, 2016 IL 119932, ¶ 31, 72 N.E.3d 260.

¶ 16                                    II. ANALYSIS

¶ 17        The Juvenile Court Act provides a two-step process the circuit court must utilize to decide whether the minor child should become a ward of the court. *In re A.P.*, 2012 IL 113875, ¶ 18, 981 N.E.2d 336. Step one of the process is the adjudicatory hearing, at which the court considers only whether the minor child is abused, neglected, or dependent. See 705 ILCS 405/2-18(1) (West 2022); *A.P.*, 2012 IL 113875, ¶ 19. If the circuit court determines the minor child is abused, neglected, or dependent at the adjudicatory hearing, then the court holds a dispositional hearing, where the court determines, *inter alia*, whether it is in the best interests of both the minor and the public that the minor be made a ward of the court. 705 ILCS 405/2-22(1) (West 2022). If the minor is made a ward of the court, then the court determines the proper disposition best serving the health, safety, and best interests of the minor child and the public. 705 ILCS 405/2-22(1) (West 2022).

¶ 18        In this case, respondent challenges only the second step, the circuit court's findings following the dispositional hearing. The purpose of the dispositional hearing is to allow the circuit court to decide what further actions are in the neglected minor's best interests. *In re April C.*, 326 Ill. App. 3d 225, 237, 760 N.E.2d 85, 95 (2001). In determining the best interests

of the minor and the public, the court considers (1) the permanency goal set for the minor; (2) the nature of the service plan for the minor; (3) the services delivered and to be delivered under the plan; and (4) all other evidence helpful to the determination, including oral and written reports, even if not competent for the purposes of the adjudicatory hearing. 705 ILCS 405/2-22(1) (West 2022). If the court determines the minor should be made a ward of the court, section 2-23 of the Juvenile Court Act provides the court with several types of dispositions, including placement of the minor in accordance with section 2-27 of the Juvenile Court Act (705 ILCS 405/2-27 (West 2022)). 705 ILCS 405/2-23(1)(a)(2) (West 2022). Section 2-27 of the Juvenile Court Act provides, in pertinent part, the following:

> "(1) If the court determines and puts in writing the factual basis supporting the determination of whether the parents *** of a minor adjudged a ward of the court are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train[,] or discipline the minor or are unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents ***, the court may at this hearing and at any later point:
>
> * * *
>
> (d) ***commit the minor to [DCFS] for care and service[.]" 705 ILCS 405/2-27(1)(d) (West 2022).

This court will only reverse the circuit court's dispositional order if the findings of fact are against the manifest weight of the evidence or the court abused its discretion by selecting an inappropriate dispositional order. *In re J.W.*, 386 Ill. App. 3d 847, 856, 898 N.E.2d 803, 811 (2008).

¶ 19        On appeal, respondent contends the circuit court's finding she was unfit, unable, or unwilling to care for V.M. was not supported by the record. Respondent notes she does not have an ongoing substance abuse problem and was engaged in substance abuse counseling. She further points out her completion of the parenting class, consistent attendance with her mental health services, cooperation with the agency, maintaining stable housing and income, and regular attendance at visits with V.M. She asserts the note about her difficulty with the G-tube did not support a conclusion she was unable to perform such tasks. Respondent contends she completed all necessary education. She further noted she now consistently attended V.M.'s medical appointments. Moreover, respondent contends her negativity was understandable considering she was missing significant portions of V.M.'s early life. Respondent contends intact services were appropriate in her case as evidenced by testimony at the adjudicatory hearing.

¶ 20        V.M. was born with serious medical issues and was G-tube dependent and required frequent feedings. Even with the proper training on feeding, respondent still had problems with G-tube feedings. Specifically, she had issues with her understanding and consistent application of the feeding skills during visits. The dispositional report was filed on March 17, 2023, which was 12 days before the hearing. The report, *inter alia*, addressed respondent's actions during her visits with V.M. Respondent did not object to the dispositional report as being outdated or present more current evidence at the dispositional hearing. Additionally, her negative behavior with the caseworker and visitation specialist was concerning and raised doubts about respondent's ability to cooperate with intact services.

¶ 21        Accordingly, we conclude the circuit court's finding respondent was unfit, unable, or unwilling to care for V.M. was not against the manifest weight of the evidence.

¶ 22                                III. CONCLUSION

¶ 23    For the reasons stated, we affirm the Sangamon County circuit court's judgment.

¶ 24    Affirmed.