NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240361-U

NO. 4-24-0361

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 15, 2024
Carla Bender
4ᵗʰ District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Z.J., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McLean County |
| Petitioner-Appellee, | ) | No. 23JA75 |
| v. | ) | |
| Darian H., | ) | Honorable |
| Respondent-Appellant). | ) | J. Brian Goldrick, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Harris and Lannerd concurred in the judgment.

**ORDER**

¶ 1     *Held*:    The trial court did not err in finding respondent unfit or in its placement of the
                minor.

¶ 2         Respondent Darian H. challenges the dispositional order finding her unfit as to her

minor child Z.J. (born in 2023), arguing the finding was against the manifest weight of the

evidence. She also argues that the trial court erred in its placement of the minor with the Illinois

Department of Children and Family Services (DCFS). For the reasons that follow, we affirm.

¶ 3                                I. BACKGROUND

¶ 4         In August 2023, the State filed a petition for adjudication of wardship, alleging Z.J.

was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act)

(705 ILCS 405/2-3(1)(b) (West 2022)) due to an environment injurious to his welfare. Specifically,

the State alleged respondent (1) was involved in an open neglect case where the minor's older

sibling was adjudicated neglected and in the care of DCFS (count I), (2) had unresolved issues with domestic violence (count II), and (3) had unresolved issues with substance abuse (count III). Following a shelter care hearing, the trial court found, based on respondent's stipulation, probable cause to believe the minor to be neglected and that there was an immediate and urgent necessity to remove the minor. Temporary custody was placed with DCFS.

¶ 5        At an October 2023 adjudicatory hearing, respondent admitted to count I of the petition. The State dismissed the remaining bases in the petition, and the trial court adjudicated Z.J. to be neglected.

¶ 6        In December 2023, the trial court held a dispositional hearing. The court was presented with a dispositional report submitted by the caseworker overseeing Z.J.'s case. The report detailed that, in May 2023, respondent's older child was taken into custody by DCFS after respondent admitted herself to a hospital to obtain treatment for suicidal ideation and substance abuse. Approximately two months later, Z.J. was born prematurely with significant medical complications requiring emergency surgery. Respondent admitted to using cannabis and opioids during her pregnancy, and Z.J. tested positive for several opioids at birth. The report further indicated respondent was involved in a domestic violence incident with Z.J.'s father, Damarcus J., which resulted in respondent's arrest for domestic battery. (We note Damarcus is not a party to this appeal.) However, the charges against respondent were later dismissed.

¶ 7        Under respondent's service plan, she was required to cooperate with DCFS, submit to random drug tests, maintain stable housing and employment, and engage in services, including mental health treatment, domestic violence classes, substance abuse treatment, and parenting classes.

¶ 8        Kyia Lemenager, a caseworker at The Baby Fold, testified she was assigned to Z.J.'s case in August 2023. Lemenager indicated respondent informed her she was receiving substance abuse and mental health treatment through Carle Addiction Recovery Center (CARC) in Champaign, Illinois. Respondent also informed Lemenager she was hospitalized in mid-November 2023 due to hip pain. However, Lemenager could not confirm this information because respondent had not completed consent forms with CARC.

¶ 9        Lemenager testified respondent was attending domestic violence and parenting classes but was still working towards completing those services. Respondent failed to appear at all scheduled drug tests prior to August 25, 2023. Lemenager explained this was due to a miscommunication about the drug testing protocols. Once Lemenager took over Z.J.'s case, respondent appeared at all scheduled drug tests and tested negative, with one missed drug test due to her hospitalization.

¶ 10        Lemenager stated she had not yet held a family team meeting with respondent. However, this was due to scheduling issues. During visitation with Z.J. and his older sibling, respondent interacted well with both of her children and behaved appropriately. Respondent maintained stable housing and obtained employment at a gas station.

¶ 11        Respondent did not present any evidence.

¶ 12        At the close of the proceedings, the trial court determined more documentation was needed to verify respondent's progress under the service plan. The court continued the hearing and requested an addendum to the dispositional report be filed.

¶ 13        The dispositional hearing resumed in January 2024. The trial court stated it had received the addendum to the dispositional report. According to the addendum, respondent regularly attended and actively participated in her domestic violence classes. However, respondent

commented that she felt like the classes were not necessary, as she "already underst[ood] that what she did in the situation regarding Damarcus was wrong." She had not yet received a certification of completion, as the domestic violence classes were still ongoing. As to substance abuse issues, the addendum stated respondent was currently receiving counseling, was compliant with her medication-assisted treatment, and completed an intensive outpatient program at CARC in September 2023. However, respondent had still not completed consent forms for her caseworker to receive information on her psychiatric treatment from Carle Champaign on Mattis. Respondent completed her parenting classes and continued to show appropriate parenting skills during visitations. The addendum included a parenting construct, in which respondent received perfect scores in each of the tested categories.

¶ 14      Following argument by the parties, the trial court found respondent successfully completed outpatient treatment and was testing negative for drugs. However, the court wanted to see longer-term compliance with the drug testing, given respondent's history of substance abuse. The court noted that respondent completed her parenting classes and achieved a perfect score on her parenting construct. While respondent had appropriate housing and employment, the court found more time was needed to assess whether respondent would maintain her home and job. Furthermore, at the time of the hearing, respondent's domestic violence classes were still ongoing. The court expressed concern that although respondent was "making progress in those classes," there were some indications in the report that her progress was "minimal." The court continued:

> "So I say all of that to say that I think [respondent] is making efforts. But I do think she is making some progress in her services. The question is is it substantial progress that the Court would make a finding of fitness today as [respondent's counsel] has requested.

*** I am not prepared to make a fitness finding today. That is not to say I don't recognize all of the work that [respondent] has put in. We want to encourage her to continue on the path that she is on and continue to cooperate, take screens, continue to do her domestic violence classes. But I am not finding her fit today."

¶ 15 The trial court found respondent unfit, made Z.J. a ward of the court, and placed guardianship and custody with DCFS.

¶ 16 This appeal followed.

¶ 17                                  II. ANALYSIS

¶ 18 On appeal, respondent argues the trial court erred in finding her unfit and placing Z.J. in the custody of DCFS. She does not otherwise challenge the court's order finding the minor to be neglected.

¶ 19 The Juvenile Court Act sets forth a two-step process the trial court must follow when deciding whether a minor should be removed from his or her parents and made a ward of the court. *In re Jay. H.*, 395 Ill. App. 3d 1063, 1068 (2009). The first step is an adjudicatory hearing, where the only question considered by the court is "whether the minor is abused, neglected[,] or dependent." 705 ILCS 405/2-18(1) (West 2022). The second step is a dispositional hearing, where the court determines (1) whether it is in the best interest of the minor and the public to make the minor a ward of the court and (2) whether the parent is unfit, unwilling, or unable to care for the minor. *In re M.M.*, 2016 IL 119932, ¶ 21; *In re A.P.*, 2012 IL 113875, ¶ 21. If the parent is found unfit and the court determines "that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of the minor's parents," the court may place custody and guardianship of the minor with DCFS. 705 ILCS 405/2-27(1)(d) (West 2022).

¶ 20        Respondent challenges only the trial court's dispositional findings on appeal. A court's dispositional findings "will be reversed only if the findings of fact are against the manifest weight of the evidence or the court committed an abuse of discretion by selecting an inappropriate dispositional order." (Internal quotation marks omitted.) *In re Al. S.*, 2017 IL App (4th) 160737, ¶ 41. A court's finding is against the manifest weight of the evidence when the opposite conclusion is clearly evident. *Id.* We afford great deference to the court's dispositional findings, as "it is in a better position to observe the witnesses, assess credibility, and weigh the evidence." *Id.*

¶ 21        In this case, the trial court's dispositional findings were not against the manifest weight of the evidence. At the time of the dispositional hearing, respondent's history of negative drug tests covered a relatively short period—from the end of August 2023 to January 2024. The court recognized that the missed drug tests prior to August 25, 2023, were not the fault of respondent. However, given that substance abuse was one of the primary issues that led to Z.J.'s removal, it was not unreasonable for the court to determine it could not find respondent fit without her demonstrating further compliance with drug testing.

¶ 22        Moreover, respondent was still working towards completion of her domestic violence services. Although respondent was regularly attending and actively participating in the classes, she was noted as making "some" or "minimal progress" after several classes in the addendum report. Again, given that domestic violence was another issue that precipitated the removal of Z.J., it was not unreasonable for the trial court to conclude it could not find respondent fit or consider returning Z.J. to her care before she completed her domestic violence classes.

¶ 23　　　　Accordingly, we find that the trial court's dispositional findings that respondent was unfit and making Z.J. a ward of the court and granting custody to DCFS were not against the manifest weight of the evidence.

¶ 24　　　　　　　　　　　　　III. CONCLUSION

¶ 25　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 26　　　　Affirmed.